No. 12,321.

THE NORTH BRITISH AND MERCANTILE INSURANCE COMPANY *v.* CRUTCHFIELD ET AL.

INSURANCE.—*Foreign Company*—*Notice to Agent is Notice to Company.*—Notice to the resident agent of a foreign insurance company, in relation to any business of insurance transacted by him for the latter, is notice to the company.

SAME.—*Condition in Policy for Notice to Company.—Sufficient Compliance With.*
—Where a condition of the policy requires that the assured shall give
notice and also render a particular account of his loss to the company,
the giving of such notice and the rendering of such account, or a tender
of the same to an authorized agent of the company, constitute a sufficient
compliance with the condition.

SAME.—*Condition that Procurer of Insurance Shall be Agent of Assured.— When
Void.*—A condition in a policy of insurance, "that any person, other
than the assured, who may have procured this insurance to be taken by
the company, shall be deemed to be the agent of the assured named in
this policy, and not of this company," is void as applied to a person
*i. e.*, a local agent, upon whose counter-signature the validity of the
policy, by its terms, is made to depend.   It is doubtful whether such a
condition, under any circumstances, can be made available as a defence
for the company after a loss has happened.

DEMURRER TO EVIDENCE.— *What it Admits.*—A demurrer to the evidence
admits all facts which the evidence tends to prove, or of which there is
any evidence, however slight, and all inferences which can be logically
and reasonably drawn from the evidence.

SAME.—*Assessment of Damages.—Evidence.—Presumption.*—Where there is a
demurrer to the evidence and the jury is discharged, and, after the
demurrer is overruled, the assessment of damages is submitted to the
court, neither party asking for another jury, it will be presumed, if the
record is silent, that the court heard all necessary evidence on the ques-
tion of damages.

From the Posey Circuit Court.

*A. Gilchrist, C. A. De Bruler* and *W. P. Edson,* for appellant.
*H. C. Pitcher,* for appellees.

HOWK, J.—In this case, the only error relied upon here
by appellant, the defendant below, for the reversal of the
judgment of the trial court, is the overruling of its demur-
rer to appellees' evidence.

The action was upon a policy of insurance, executed by
appellant, and countersigned and issued by its duly author-
ized agent at Mount Vernon, Indiana, on the 9th day of
February, 1882, to one Thomas J. Gordon; whereby appel-
lant, in consideration of a certain premium, did insure the
said Gordon, against loss or damage by fire to his property
therein described, in the sum of $1,600, for the term of three

years from and after the date of the policy, as follows: $1,-000 on his one-story frame dwelling-house; $200 on his household and kitchen furniture, and $400 on his one-story frame store-room, all occupied by him and situated on his farm, on the Mount Vernon and Uniontown road, in Henderson county, Kentucky. It was alleged by appellees in their complaint, that, on the 20th day of August, 1884, said dwelling-house was wholly consumed by fire, and the furniture damaged by such fire in the sum of $100; that at the time of such loss, Thomas J. Gordon was the owner of the property so destroyed and damaged, and fully performed all the conditions of the policy on his part; and that, on September 1st, 1884, Gordon assigned in writing the aforesaid policy to appellees. Wherefore, etc.

Issue was joined by appellant's answer in general denial.

Counsel on both sides concur in stating that the only evidence introduced by appellees, in support of their cause of action, was the policy of insurance and its assignment, and the oral testimony of Thomas J. Gordon. On behalf of the appellant, its counsel insist that the evidence wholly fails to show that the assured had complied with the conditions of his policy, which required him to render a particular account of his loss, signed and sworn to by him, stating whether any and what other insurance had been made on the same property, etc. On the other hand, appellees' counsel contends, that the conduct of the adjuster, and general agent of the appellant, towards the assured, as shown by his testimony on the trial, was such as to dispense with, or constitute a waiver of, any compliance by the assured with the conditions of his policy requiring him to render a particular account of his loss. We give, in this connection, from the brief of appellant's counsel, the entire testimony of the assured, Thomas J. Gordon, on the trial of this cause, as follows:

" The house mentioned in the policy belonging to me burned on the 20th day of August, 1884, at 10 o'clock in the morning after breakfast. It was a total loss, and part of the fur-

niture in the house also burned. We saved some of it. It left us out-doors, and we batched in a tent. I came to John L. Rosencrans, the local agent of the company at Mount Vernon, Ind., and told him of the loss. I sent word to him before that by David Barker. When I told Rosencrans of the loss he said it was best to wait until Mr. T. H. Smith, the adjuster of the company, came, that he (Rosencrans) had nothing to do of that kind, and that the adjuster would be here shortly. I waited eight or ten days, and came down again to see Rosencrans, when I asked him if the North British and Mercantile Insurance Company had gone into bankruptcy. Rosencrans replied that he had just received a telegram from Mr. Smith that he would be at Mount Vernon that night, and for him (Rosencrans) to prepare for a ride to-morrow. He came, and they went over the river from Mount Vernon to the premises where the house burned. The next day or two after that, on Monday, I saw Mr. Smith, the adjuster and general agent, in Mr. Rosencrans' office in Mount Vernon. He (Smith) asked me if I had made out plans and specifications and proofs of loss; that the company required them to be made. I said I am ready to make proof of loss or any other papers he wanted. He would not furnish me any papers for that purpose, and he refused to give me any instructions or satisfaction. I told him I would make them out in ten days. He said it would take thirty days. After that I tendered my account of losses to Rosencrans. He refused to take them. Rosencrans told me I must send them to the company at Chicago, and offered to furnish me an envelope with the address to send it in. Mr. Smith asked me if I had filed plans and specifications of the building burned and proof of loss. I filed my account of loss with Rosencrans, or offered to do so, the second day after Mr. Smith was in Mount Vernon, and Rosencrans refused to take them. Mr. Smith told me there were a couple of stoves saved from the building, and asked me to take care of the stoves and a piece of the sills of the house until the suit, so they could be produced at the trial if

we had a suit. I saved a piece of the sill and intended to have it here to-day. I sent for it, but it is not here. I was owner of the house and furniture at the time of the loss."

And said witness, being cross-examined by the defendant, testified as follows:

"Mr. Smith, the adjuster, was here about three weeks after the 20th day of August, 1884, the day the house burned. It was four or five days after the fire that I saw John L. Rosencrans, and told him of the loss. I only saw Mr. Smith twice. I talked with him twice only; both times at Mr. Rosencrans' office, in the Posey County Bank. John L. Rosencrans, Luke Rosencrans and William D. Crunk were the only persons present at those two conversations. They were there when the conversations took place, except that W. D. Crunk was not present all the time, and John and Luke Rosencrans were. The policy of insurance was then in the Posey County Bank. At that time Mr. Smith told me to send the plans and specifications of the house and the proofs of loss to Chicago; that Mr. Rosencrans would furnish me a printed envelope to send them in; that Mr. Rosencrans had no right to receive them, and that they must be sent by me to the company at Chicago, and I must put it into the postoffice myself. Mr. Smith said to me that he required plans and specifications of the house burned. I told him I was ready to furnish them. I never made or furnished any plans or specifications. I tendered plans and specifications and proof of loss to Rosencrans two days after Smith was here, and he refused to take them."

Re-direct examination:

"Mr. Smith asked me if I had filed plans and specifications and proof of loss. I said I would file them in two days. He replied you can't file them that soon—it will take you thirty days. He told me I must send them to Chicago. I said I would file them day after to-morrow. He said if you do make them out they will not be right, and said he would send them back, and keep sending them back until they were right. I said I am ready to file papers to Rosencrans, and Rosencrans

said he would not take them; that he had nothing of that kind to do; that he would furnish me a printed envelope for me to send them to Chicago, and I must mail it myself at the postoffice. Mr. Smith said he would return them as long as I sent them, if they were not right."

In considering the sufficiency of the evidence to sustain the decision of the circuit court, in overruling appellant's demurrer to appellees' evidence, it must be borne in mind that, by its demurrer, appellant admitted all facts of which there was any evidence, and all conclusions which can, fairly and logically, be drawn from such facts. In passing upon and deciding the questions presented by a demurrer to the evidence, the court must consider not only all the facts which the evidence tends to establish, but also all such fair and reasonable inferences of fact, as the jury, if trying the cause, might have lawfully drawn from such evidence. The rule as we have stated it, which controls in the consideration and decision of a demurrer to evidence, is declared in and sustained by many of our reported cases. *Trimble* v. *Pollock*, 77 Ind. 576, and cases cited; *Willcuts* v. *Northwestern Mutual Life Ins. Co.*, 81 Ind. 300, and cases cited; *McLean* v. *Equitable Life Assurance Society, etc.*, 100 Ind. 127 (50 Am. R. 779), and cases cited; *Lake Shore, etc., R. W. Co.* v. *Foster*, 104 Ind. 293 (54 Am. R. 319).

In the case last cited, in laying down the rules to be applied by the courts, in passing upon a demurrer to evidence, the *first* rule is thus stated: "*First.* A demurrer to the evidence admits all facts which the evidence tends to prove, or of which there is any evidence, however slight, and all inferences which can be logically and reasonably drawn from the evidence." See, also, the numerous authorities there cited in support of this *first* rule.

Having thus stated the rules which must govern us, in passing upon appellant's demurrer to appellees' evidence, we pass now to the consideration and decision of the particular points or questions, upon which appellant's counsel rely,

with much apparent confidence, for the reversal of the judgment. We have already stated, but will here repeat, what we regard as the principal point, urged by appellant's counsel for the reversal of the judgment herein, in their own language, as follows: "It was necessary, before plaintiffs could recover, for them to show that the assured had complied with the conditions of his policy, which required him to render a particular account of his loss, signed and sworn to by him, stating whether any and what other insurance had been made on the same property," etc. Appellees alleged in their complaint, as we have seen, that the assured fully performed all the conditions of the policy on his part. The condition of the policy, to which appellant's counsel refer in the above quotation from their brief of this cause, reads as follows: "Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the company, and, as soon thereafter as possible, render a particular account of such loss, signed and sworn to by them, stating whether any and what other insurance has been made on the same property," etc. The "particular account of such loss," mentioned in the foregoing condition, is what is known, in common parlance, as the "proofs of loss." Appellant's counsel claim that the evidence wholly fails to show any compliance by the assured with the foregoing condition of his policy. If this claim of counsel is sustained by the record, then the trial court erred in overruling appellant's demurrer to the evidence, and the judgment below must be reversed.

The first question for our decision, under the law, therefore, may be thus stated: Is there any evidence, however slight, in the record of this cause, which tends to prove, or from which the triers of the facts might logically and reasonably infer, that, at the proper time, the assured had substantially complied with the foregoing condition of his policy, by rendering to the appellant the particular account or proper proof of his loss? We are of opinion that this question ought to be and must be answered in the affirmative. The

policy of insurance was in evidence, and it showed upon its face that J. L. Rosencrans was "the duly authorized agent of the company, at Mount Vernon, Indiana," and that he there countersigned and issued the policy to the assured, on the 9th day of February, 1882. From this evidence, the trier of the facts might reasonably infer that appellant's agent had, by complying with the provisions of section 3765, R. S. 1881, in force since March 3d, 1877, obtained from the auditor of state the proper certificate of authority "to take risks or transact any business of insurance in this State," in the name of appellant and as its agent. Other evidence in the record tended to prove that Rosencrans continued to act as the duly authorized agent of appellant, until some time after the loss by fire of the property insured by the policy sued on herein.

There is evidence, also, tending to prove that the assured promptly notified appellant's agent, Rosencrans, of the loss of his dwelling-house by fire. No objection is made by appellant's counsel to this notice, and it may be assumed, therefore, that, in so far as notice of the loss to the company was concerned, the giving of such notice to its agent, Rosencrans, was a sufficient compliance by the assured with the aforesaid condition of the policy. By the terms of the same condition, the particular account of his loss was, also, to be rendered to the company. Upon this subject, the assured testified: "I tendered plans and specifications and proof of loss to Rosencrans, two days after Smith was here, and he refused to take them." Elsewhere, it appeared that Rosencrans was probably acting under the instructions of Smith, the adjuster, in refusing to receive the proof of loss, when tendered by the assured. According to the evidence, Smith was apparently determined to baffle the assured, and keep him out of the money due on his policy. It was insisted by Smith that the assured must send the proof of loss to him, at Chicago, Illinois; but this was not required by the terms of the policy, and certainly, in the absence of contract, it was never contemplated by our statute, under which Rosencrans was au-

thorized as appellant's agent to transact its business of insurance in this State.

Under our statute, there can be no doubt, we think, that, where a condition of the policy requires that notice of the loss shall be given to the company, the giving of such notice to the duly authorized agent of a foreign insurance company, doing business in this State, will be a sufficient compliance with the terms of such condition. In *Pittsburgh, etc., R. W. Co.* v. *Ruby,* 38 Ind. 294 (10 Am. R. 111); it was held " that notice to an agent of a corporation, relating to any matter of which he has the management and control, is notice to the corporation." In *Phœnix Mut. Life Ins. Co.* v. *Hinesley,* 75 Ind. 1, after quoting the rule on the subject of notice to an agent of a corporation, as stated in the case last cited, the court said : " It seems to us that this rule of law is especially applicable to the agents of foreign insurance companies, transacting the business of insurance for their companies in this State, and that it must be held that notice to such agents, in relation to any business of insurance transacted by them for their companies, is notice to such companies." Upon the points stated in this quotation, the case last cited has been approved and followed in *Willcuts* v. *Northwestern Mut. Life Ins. Co., supra,* and in *Ætna Ins. Co.* v. *Shryer,* 85 Ind. 362.

We know of no good reason why it should not be held, also, where a condition of the policy, as in the one under consideration, requires that the assured shall render the particular account of his loss to the company, and not to any specified officer or person, or at any specified office or place, that the rendering of such particular account of his loss by the assured, to the duly authorized agent of a foreign insurance company, will constitute a sufficient compliance by the assured with the terms of such condition. Text-writers and courts agree in saying that the agent of an insurance company may waive the rendering by the assured of the particular account or proofs of his loss, and that such waiver may be implied by, or inferred from, the facts and circumstances of the

case. *Ætna Ins. Co.* v. *Shryer, supra,* and authorities cited. *A fortiori* should it be said, we think, that the tender by the assured of his proofs of loss to the agent of a foreign insurance company, who countersigned and issued to the assured his policy, and who, so far as appears, was the only officer or agent of such company in this State, and the unexplained refusal of such agent to accept such proofs of loss without objection thereto, was a sufficient compliance by the assured with the condition of his policy. Certainly, it must be said, under the rules of law applicable to the case as here presented, that there is evidence in the record which tends to prove, and from which the court or jury might reasonably infer the fact, that the assured had substantially complied with the conditions of his policy, both in giving notice and in rendering the particular account of his loss to the company.

But it is claimed, that appellees can not recover because they failed to put in evidence the plans and specifications, and proofs of loss, mentioned in the testimony of the assured. Doubtless, appellant had the right to object to this testimony, and to insist that no evidence should be heard in relation to the plans and specifications, and the proofs of loss, until they were produced at the trial, or satisfactory reasons given by appellees for their non-production. Appellant made no objection to the testimony of the assured, and did not, as it might have done, call for and put in evidence the plans and specifications, and proofs of loss, mentioned by the assured.

Appellant's counsel say : " There can be no presumption that these papers were sufficient, when the plaintiffs, having them in their possession, or, at least, having the assured, in whose possession they were, present and testifying on the trial, failed to put them in evidence." This argument, however may be used with equal force against the appellant, thus : It may be fairly presumed against the appellant, " that these papers were sufficient," both in form and substance, because " having the assured, in whose possession they were, present and testifying on the trial," under cross-examination by its.

learned counsel, appellant did not ask the assured to produce "these papers," and "failed to put them in evidence."

It was shown by the evidence, as we have seen, that the assured tendered his plans and specifications, and the proofs of his loss, to appellant's agent, Rosencrans, who refused to receive them, but made no objection, so far as the record shows, to either their form or substance. From the evidence, therefore, the court might have reasonably inferred that the plans and specifications, and proofs of loss, so tendered by the assured, were such as were called for by the conditions of his policy, and substantially complied with such conditions. *Indiana Ins. Co.* v. *Capehart, ante,* p. 270.

But it is claimed that Rosencrans was the agent of the assured, and not of the appellant, by reason of the following condition in the policy, namely : "It is a part of this contract that any person, other than the assured, who may have procured this insurance to be taken by the company, shall be deemed to be the agent of the assured named in the policy, and not of this company under any circumstances whatever, or in any transactions relating to this insurance." As applied to Rosencrans and the policy here in suit, the condition quoted is, we think, absolutely null and void. By the terms of the policy, its validity and binding force were made to depend upon the counter-signature of J. L. Rosencrans, "the duly authorized agent of the company, at Mount Vernon, Indiana." The condition quoted, no doubt, "crouched unseen in the jungle of printed matter, with which a modern policy is overgrown;" and it is a question, upon which the authorities are not strictly in harmony, whether such a condition can be made available as a defence for the company, after the loss has happened against which the policy professed to guard. *Van Schoick* v. *Niagara Fire Ins. Co.,* 68 N. Y. 434.

In *Patridge* v. *Commercial Fire Ins. Co.,* 17 Hun, 95, in speaking of a condition very similar to the one last quoted, it is vigorously said by the Supreme Court of New York:

The North British and Mercantile Insurance Co. v. Crutchfield *et al.*

" It is true that the policy contains that common provision that any person, other than the assured, who may have procured the insurance, is to be deemed an agent of the assured, and not of the company. This is a provision which deserves the condemnation of courts, whenever it is relied upon to work out a fraud, as it is in this case. The policy might as well say that the president of the company should be deemed the agent of the assured. * * * Such a clause is no part of a contract. It is an attempt to reverse the law of agency, and to declare that a party is not bound by his agent's acts. Whether one is an agent of another is a question of mixed law and fact, depending on the authority given expressly or impliedly. And when a contract is, *in fact,* made through the agent of a party, the acts of that agent in that respect are binding on his principal." *Indiana Ins. Co.* v. *Hartwell,* 100 Ind. 566.

In the case in hand, we are of opinion that there is evidence in the record which tended to prove, and from which the court or jury might reasonably infer, that Rosencrans was, and continued to be, in fact and in law, the duly authorized agent of appellant, and not of the assured.

The last point made by appellant's counsel, which needs to be considered under the rules of law applicable to this case, is thus stated : " There was no evidence whatever of the value of the house, or of the furniture that was burned,—no evidence that either was of any value. There is an entire absence of proof upon this question." The point thus made by counsel seems to be sustained by the record of this cause. If the question of excessive damages, or of error in the assessment of the amount of appellees' recovery, had been properly saved in the record and presented here by a proper assignment of error, appellant might, perhaps, have been in a condition to complain here of the assessment of appellees' damages, but this point we need not and do not decide, as the question is not before us. All that we need to decide is

that, upon the case made by the evidence set out in appellant's demurrer, appellees were entitled to at least nominal damages. Where there is a demurrer to evidence and a joinder, the court may have the damages assessed by the jury conditionally; or the jury may be discharged, leaving the damages to be assessed by another jury, should the demurrer be overruled. *Andrews* v. *Hammond*, 8 Blackf. 540; *Lindley* v. *Kelley*, 42 Ind. 294; *Strough* v. *Gear*, 48 Ind. 100.

In the case under consideration, when appellant demurred to appellees' evidence, the jury was discharged, leaving the damages to be assessed by another jury, if the demurrer should be overruled. The record shows, that after the demurrer to the evidence was overruled, the assessment of appellees' damages was submitted to the court, neither party asking for a jury. The record is silent as to whether or not any evidence was heard by the court on the question of appellees' damages. In such a case, we must presume, in aid of the finding and judgment, that all proper and necessary evidence was heard by the court on the question of the assessment of appellees' damages.

We have found no error in the record of this cause.

The judgment is affirmed, with costs.

Filed Dec. 17, 1886.