## DELIVERY OF PROOFS OF LOSS TO GENERAL AGENT IS DELIVERY TO THE COMPANY.

### Superior Court of Cincinnati.

ALBERT S. WOOD, EXECUTOR OF THE ESTATE OF ISABELLA F. WOOD, v. THE CONNECTICUT FIRE INSURANCE COMPANY.

### Decided, December, 1913.

*Fire Insurance—Interest of Insured Not Changed—By Transfer of Title to Trustee for Sole Benefit of Insured—Filing of Proofs of Loss—Time Limits for so Doing and for Making Payment Under the Policy.*

1. Where a policy of fire insurance provides that the entire policy shall be void if the interest of the insured be other than unconditional and sole ownership, a transfer of the legal title in the property covered by the policy to a trustee for the sole benefit of the insured so that if the property was destroyed the entire loss would fall on the insured, does not change the interest of the insured so as to render the policy void.

2. Where a policy of fire insurance requires proofs of loss to be rendered to the company, an agent who is authorized to solicit fire insurance, to issue and countersign policies, and to collect premiums, is a general agent representing the company for the purpose of receiving or being served with proofs of loss in case of fire, and the delivery of proofs of loss to such agent is as a matter of law a delivery to the company.

3. A clause in a New York standard form policy of fire insurance, providing that proofs of loss shall be rendered to the company within sixty days after the fire, does not constitute a condition precedent, the failure to perform which would preclude a recovery under the policy, where there is no provision in the policy declaring that such failure renders the policy void.

4. Where such a policy provides that the loss shall not become payable until sixty days after proofs of loss have been filed, a failure to file proofs of loss within the sixty day period referred to in the preceding paragraph merely postpones the time of payment of the loss.

5. Where, in an action for recovery under a policy of fire insurance, the defendant company sets up separate defenses in each of which there is a general denial and a specific denial, the general denials will be considered as limited and restricted to such particulars

as are pointed out in the specific denials and the only issues tendered will be those raised by the specific denials.

*Edward Colston* and *Wallace Burch,* for plaintiff.
*J. W. Mooney* and *Robert L. Black,* contra.

SUTPHIN, J.

This is an action to recover on a policy of fire insurance. The case came on for trial upon the issues joined by petition, answer and reply, and at the conclusion of the plaintiff's evidence the defendant made a motion to arrest the case from the jury and direct a verdict for defendant, which was overruled. Defendant thereupon rested without introducing any evidence. The facts in this case were undisputed and the court directed the jury to return a verdict for the plaintiff in the sum prayed for, with the exception that the interest was to be calculated from March 15, 1913, instead of from March 10, 1913, as set forth in the prayer of petition, which modification was requested by counsel for plaintiff.

The facts in this case were as follows:

On October 31st, 1912, the Connecticut Fire Insurance Company issued a policy of insurance for one thousand ($1,000) dollars to Isabella F. Wood on a building located at No. 234 East Front street, Cincinnati, Ohio, insuring said premises for a period of one year from that date, and the premium due thereon was paid. On November 12th, 1912, at one o'clock in the morning, the building was completely destroyed by fire so as to render it a total loss. On November 25th, 1912, Isabella F. Wood died, and on December 3, 1912, the plaintiff, Albert S. Wood, her son, qualified as executor under her last will and testament. For some twenty years prior to her death the insurance on this property had been looked after and arranged for by the insurance firm of C. F. Runck & Company, who not only secured the policy in question but had their name stamped on the back of the policy. The policy itself had been secured from the insurance firm of Earls & Johansing, who signed the same as agents for the defendant company. The proofs of loss under this policy, as well as under other policies covering the property, were prepared by the plaintiff with the assistance of

his counsel, Mr. Wallace Burch, and on January 8th, 1913, were delivered to C. F. Runck & Company. The proofs were returned to Mr. Burch to correct some technical oversight, and supplemental proofs were prepared and delivered to C. F. Runck & Company on January 10th, 1913. At eleven o'clock on that day Mr. C. F. Runck himself took these proofs of loss and delivered them to Earls & Johansing, the agents whose name appeared on the policy itself, but the latter refused to accept them, stating that the matter was in the hands of the state agent, Mr. Reynolds. Mr. Runck thereupon took the proofs of loss over to Mr. Burch's office, and in his absence left them with his stenographer, Miss Howe, at the same time advising her that Earls & Johansing had refused to accept the proofs and that therefore Mr. Burch had better send them at once to the home office of the company. Mr. Burch received this message upon his return to the office and immediately wrote a letter to the defendant company, addressed to its home office in Hartford, Connecticut, and enclosed therein the proofs of loss. This letter was mailed at the registry department of the post office at Cincinnati, between five and six o'clock on that same day, and a receipt obtained therefor. It is admitted that these proofs of loss were received by the defendant company at its home office on January 13th, 1913. The tenth day of January above mentioned, was the fifty-ninth day after the loss occurred and was on a Friday. The Monday following, to-wit, the 13th, was the sixty-second day after the loss had occurred.

The policy, as above stated, was issued October 31st, 1912, in the name of Isabella F. Wood as the insured. For a number of years prior thereto this property had been looked after entirely by Mrs. Wood's son, Albert S. Wood, the plaintiff in this case. He had rented the property, collected the rents, looked after the repairs, paid the taxes and insurance, and in fact had done everything that there was to be done with reference to the property itself, and had turned over the proceeds to his mother. It seems that Mrs. Wood owned in addition to this property, her old home in Hyde Park, Cincinnati, in which she and her family lived. Some time prior to September 29th, 1911, Mrs. Wood, who was then seventy-six years of age and in

a feeble condition of health, was being bothered by real estate agents, who were trying to get her to sell the old home in which she had lived for over forty years, and in fact one real estate agent had induced her to sign some paper. This experience greatly worried Mrs. Wood, as she felt that these real estate agents were taking advantage of her advanced years and feeble condition of health; whereupon she had a conference with all the members of her family and her lawyer, Mr. Burch, and it was decided that to protect her against further trouble, she should turn over all her property, including the property on Front street, which was the subject of this insurance, to her son, Albert S. Wood, as trustee. In accordance therewith, on September 29th, 1911, she executed a deed conveying the property in question to Albert S. Wood, trustee, which contained the following clause:

"This conveyance is made upon the following terms and conditions: The said Albert S. Wood, trustee, is to hold said property in trust for the grantor with full power and authority to convey, transfer and sell said premises and re-invest the proceeds as said trustee may deem advisable, in his name as trustee; to rent the same, collect the rents, keep the property in repair and pay all the taxes, and account to the grantor for the net proceeds.

"It being agreed that said trustee is to receive one ($1) dollar as the total compensation for all his services under this deed of trust.

"It is further stipulated that this trust is only to continue during the life of grantor and that at her death said trust is to terminate and cease and said property to be distributed as provided by grantor in her will."

This condition of the title continued until the grantor's death on November 25th, 1912, as above stated. No change occurred in the relation of the parties towards this property as a result of this deed. Albert S. Wood continued to look after the property as he had been accustomed to, and to turn over the net proceeds to his mother. He did not in any manner convey or encumber the property, but merely continued to rent the same, collect the rents, keep the property in repair and pay the taxes. As far as insurance was concerned, C. F. Runck continued to

look after it and would select the fire insurance companies and secure the policies, and then notify Mr. Wood of what he had done, whereupon Mr. Wood would come in and get the policy and pay the bill for premiums. On or just before October 31st, 1912, Mr. Wood had a talk with Mr. Runck, at which time he told him about the change in the title of the property and the circumstances leading up to it, so that on October 31st, 1912, when Mr. Runck handed this policy to Mr. Wood he advised him to have his mother assign the policy to himself as trustee, whereupon Mr. Wood took the policy home with him and his mother signed the form marked "Assignment of Interest by Insured," and he filled in her name as owner and his name as assignee and the date, November 2nd, 1912. A few days later he returned the policy to Mr. Runck, who promised to secure the consent of the company to such assignment of interest. This happened several days before the fire. The fire occurred, as above stated, at one o'clock in the morning of November 12th, 1912. Mr. Runck reached his down-town office about eight o'clock in the morning of that day, and when he learned that the fire had occurred, he immediately took the policy over to the office of the firm of Earls & Johansing and secured their signature as agents for the company, consenting to the assignment above mentioned, and inserting the date thereon of November 12th, 1912, so that, as a matter of fact, the consent of the company to this assignment was not obtained until after the loss had occurred.

The petition in this case was filed April 19, 1913, and after reciting the death of Isabella F. Wood and the appointment of the plaintiff as executor, alleged the ownership of the property in question, the issuance of policy by the defendant company and the payment of premium thereon; that the testatrix had duly performed all the conditions of the policy on her part to be performed, and that the building was totally destroyed by fire at the time above mentioned. The petition further alleged that on November 12th, 1912, the defendant was duly notified of the loss, and that on the 10th day of January, 1913, more than sixty days prior to the suit, plaintiff gave defendant due proofs

of loss, that defendant denied liability, and that no part of the loss had been paid.

The answer of the defendant contains three defenses:

First, an admission of incorporation and delivery of the policy in question. This is followed by a denial that defendant insured the testatrix unconditionally. The third paragraph is as follows:

"The defendant denies each and every allegation contained in plaintiff's petition not herein specifically admitted or denied.

This is in turn followed by an allegation that the policy provided that the company should not be liable for a greater proportion of the loss than the amount insured should bear to the entire insurance. This last claim need not be considered in this case, as counsel for defendant admitted during the trial that there had been a total loss.

The second defense in the answer incorporates as a part of it all of the admissions, denials and averments contained in the first defense, and after quoting certain provisions in the policy sets up a separate defense that plaintiff had failed to file the written statement and proofs of loss required by the policy within sixty days after the fire.

The third defense incorporates the same matters above referred to, and then sets up as a separate defense that the interest of the insured in the property was other than sole and unconditional ownership and that said interest was not truly stated in the policy. The answer concludes with an offer to return the premium which had been paid on the policy.

The reply to the first defense in the answer was that the loss was total and in excess of the amount of insurance, followed by a general denial. The reply to the second defense was a general denial coupled with the allegation that plaintiff had notified defendant of the loss and that defendant advised him that it refused to pay the policy. Insofar as this was an attempt to plead a waiver, it was improper to be set up in the reply, but as no evidence was offered on this point it becomes immaterial. The reply to the third defense was a general denial coupled

with the allegation that plaintiff had duly notified defendant of the conditions of and title to said property.

Counsel for defendant claim that the court erred in overruling the motion to direct a verdict for the defendant and in directing a verdict for the plaintiff for the following reasons:

First, that plaintiff failed to prove that immediate notice of the loss had been given in writing to the company.

Second, that plaintiff failed to prove the delivery of proofs of loss to the company within sixty days after the fire.

Third, that the interest of the insured was other than unconditional and sole ownership.

## I.

This first point was not raised during the trial of the case but was advanced for the first time upon argument of motion for a new trial. The solution of this question must primarily depend upon whether the matter of giving notice of the loss to the company was an issue raised by the pleadings. In support of this contention defendant relies upon the case of *Moody* v. *Insurance Co.*, 52 O. S., 12, in which it was held that the defense of "unauthorized vacancy," as the defense of sole unconditional ownership in this case, was a matter of affirmative defense the burden of proving which rested upon the defendant. The court distinguished such provisions of the policy as rendered it void, from other provisions the performance of which were conditions precedent to recovery, and in that connection, at the bottom of page 17, used the following language:

"And hence, the conditions precedent in such a policy include only those affirmative acts on the part of the assured, the performance of which is necessary in order to perfect his right of action on the policy, such as giving notice and making proof of the loss, furnishing the certificate of a magistrate when required by the terms of the policy, and, it may be, in some cases other steps of a like nature."

While this is really *obiter dictum,* its effect is to hold that in an action on a policy of fire insurance the plaintiff must prove due performance of all conditions on his part, if such conditions

are properly put in issue by defendant. It is claimed, therefore, that the answer of defendant raised the issue of notice of the loss in this case. The plaintiff pleaded due performance of all conditions on his part to be performed, and also that due notice of the loss had been given, and delivery of proofs of loss had been made. To this petition defendant filed an answer setting up three defenses in each of which was incorporated the langauge, "the defendant denies each and every allegation contained in plaintiff's petition not herein specifically admitted or denied."

It is a serious question, in the first place, whether such language constitutes a general denial, but assuming that it does, we find coupled with it under the second defense a specific denial that statement in writing and proofs of loss were made and rendered to the company, as required by the terms of the policy, which was in turn denied by the reply; in other words, we have an answer containing a general denial coupled with a specific denial, and the question is therefore raised whether the general denial is not thereby limited and restricted to such particulars as are pointed out in the specific denial.

In referring to the rule above announced, the Supreme Court in the Moody case said on page 20:

"Especially should the rule be as we have stated it, under our code system of pleading, a prominent object of which was to so simplify the issues, that the evidence might be confined to the real matter of dispute, thus expediting the trial of causes and facilitating the business of the courts."

The effect of a specific denial is shown by the language of the Supreme Court in the case of *Ridenour* v. *Mayo*, 29 O. S., 138, at 145, where the court says:

"It is true, the fact thus pleaded might have been given in evidence under a denial of the facts stated in the petition, and, as a general rule, matters which may be given in evidence under the general issue should not be *specifically pleaded*. To this rule, however, there are some exceptions.

"By pleading the facts stated in this answer an issue was tendered, which is much narrower than the general issue or an issue made by a general denial; and the issue thus tendered, no

doubt, involved all the facts which were in dispute between the parties. The prime object in pleading is to narrow the controversy between the parties by joining issue only upon such material facts as are really in dispute.''

The conclusion to be drawn from this language is that the defendant in the case at bar, by pleading the specific denial, narrowed the issue to the only condition precedent in dispute, to-wit, the rendering of a statement in writing and proofs of loss within sixty days. Here there were a number of conditions precedent which it might have been necessary for plaintiff to prove if properly raised in issue, but the defendant saw fit to narrow the issue by specifically setting out the particular condition and its breach, thereby advising the plaintiff and the court of the issue to be tried. Can the defendant now be heard to say that its general denial imposed upon plaintiff the burden of proving the other conditions precedent, not specifically denied, or rather, was not the plaintiff entitled to presume that the only condition precedent in dispute was that specifically denied? Section 11314 of the code provides that an answer shall contain ''a general or specific denial of each material allegation of the petition controverted by the defendant.'' The word ''or'' is significant and indicates that a denial must be either general or specific, but can not be both. When it is both, courts have construed that the general denial raises no issue outside of the specific denial. See *Brewing Co.* v. *American Ice Machine Co.*, 77 Fed. Rep., 138 (decision of the Circuit Court of Appeals, 8th Circuit); *Kahnweiler* v. *Phenix Ins. Co.*, 67 Fed. Rep., 483; *Bliss Code Pleading*, 3d Ed., Section 356a; *Preston* v. *Roberts*, 12 Bush, 570. Applying this rule to the question involved, there was no issue raised by the pleadings as to giving notice, and therefore it was not incumbent upon the plaintiff to prove it as a condition precedent to recovery.

## II.

The policy in question is what is known as a ''New York Standard Form Policy,'' and the provisions pertaining to the second question under consideration are as follows:

"If fire occur the insured .* * *    within sixty days after the fire unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged."

This is followed by provision for appraisement if parties can not agree on the amount of loss, and the clause as to when the loss becomes payable is as follows:

"And the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

And then a provision as to suits on the policy in the following language:

"No suit or action on this policy for recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with *all the foregoing requirements,* nor unless commenced within twelve months next after the fire."

The undisputed facts show that a delivery of these proofs of loss were made to Earls & Johansing on the fifty-ninth day after the fire, and the question therefore is whether this delivery to the agent of the defendant company was sufficient to satisfy the terms of the policy within the meaning of the law. No question is raised as to the sufficiency of the statement or proofs of loss themselves. The evidence tended to show that the defendant

company furnished Earls & Johansing printed forms of insurance policies signed in blank by the president and secretary of the company, with power to counter-sign and issue the policies on behalf of the company without any further consent from the officers of the company. They were also authorized to collect premiums and to execute consents to assignments of interest by the insured, and to grant permission to remove property insured. Furthermore, the policy by its express terms, contemplates that certain of its conditions can be waived or modified by such agents as Earls & Johansing, provided it is in writing and attached to the policy. In fact, it would seem that the sixty day period for filing proofs of loss could be extended by such consent in writing. It has been distinctly held in this state that an agent for an insurance company, possessing such authority, is to be considered a general agent of the company within the meaning of the law. *Machine Co.* v. *Insurance Co.,* 50 O. S., 549.

The terms of this policy are that such proofs of loss shall be *rendered* to the company. The policy does not provide that it shall be made to the home office of the company or to any particular officer of the company—but merely to the company. Now, the defendant company, like any other corporation, can only act by its officers and agents. Here we have a company with its home office in Hartford, Connecticut, doing business presumably all over the United States—a business which by its very nature requires the employment of agents at various points within such territory. It is only by the employment of such agents that the company is enabled to transact a larger business than it could handle solely through its home office. The firm of Earls & Johansing was the duly commissioned agent in Cincinnati, to whom had been granted the power to set in motion the entire machinery of insurance by the signing of blank policies. In view of these circumstances it is difficult to follow the argument of counsel for defendant when they say that the authority of such agents for the defendant company shall be deemed limited to that period of time up until a loss occurs and from that point on they are entirely without authority to represent the company; in other words, while there are contracts to be issued and premiums to be collected, Earls & Johansing are to be con-

sidered the agents of the company, but the moment a loss occurs and the company is called upon to perform its part of the contract, then such agency is automatically revoked, and the insured, who has been led to look upon such agents as an integral part of the company itself, finds that he has been doing business with a mere shadow. Such a contention appeals to the court as narrow and arbitrary and overlooks the apparent scope of these agents' authority as a matter of law. There is certainly nothing in the policy to indicate that the authority of such agents was so limited, nor is there anything to show that either the insured or the plaintiff in this case had any notice to such effect.

Our conclusion therefore is that in the absence of an express provision in the policy, or notice otherwise given to the insured to the contrary, an agent who is authorized to solicit insurance, to issue and counter-sign policies, and to collect premiums, is a general agent representing the company for the purpose of receiving or being served with proofs of loss in case of fire, and that the delivery of proofs of loss to such an agent is a delivery to the company where the policy requires proofs to be rendered to the company. This view is supported by the following authorities:

*Insurance Co.* v. *Krutchfield,* 108 Ind., 518, where at page 526 the court said:

"We know of no good reason why it should not be held, also, where a condition of the policy, as in the one under consideration, requires that the assured shall render the particular account of his loss to the company, and not to any specified officer or person, or at any specified office or place, that the rendering of such particular account of his loss by the assured, to the duly authorized agent of a foreign insurance company, will constitute a sufficient compliance by the assured with the terms of such condition." * * * *4 Joyce on Insurance,* Section 3312; *4 Cooley Briefs on Insurance,* 3879; *Green* v. *Insurance Co.,* 190 Mass., 596; *DeMichele* v. *Insurance Co.,* 120 Pac. Reporter (Utah), 846; *Vesey* v. *Insurance Co.,* 101 N. W. Rep. (Dakota), 1074; *Greenlee* v. *Insurance Co.,* 73 N. W. Rep. (Iowa), 1050.

This exact proposition does not seem to have been passed upon in this state. The decisions relied on by counsel for defendant are readily distinguishable. For instance, in the case of *Union*

*Central Life Insurance Company* v. *Hook,* 62 O. S., 256, an agent who solicited a policy of insurance attempted to make certain verbal modifications of same and also attempted to vary the terms of the policy with reference to the payment of premiums, when by the express terms of the policy the payment of premiums could not be waived without the consent of certain definitely described officers of the company. There can be no question that such is the law, but it had no application to the case at bar. A case particularly relied upon was that of *Stacy* v. *Insurance Co.,* 25 C. C., 67, which was reversed without report in 72 O. S., 593. In that case it was claimed that the agent waived the filing of proofs of loss within sixty days by denying liability under the policy. By the terms of the policy a waiver of such condition could not be made the subject of agreement even in writing, and we can well understand that a power to waive a condition of a policy would be far more strictly construed than a power to accept the delivery of proofs of loss within the time specified in the policy itself. In other words, in the case at bar the agent was neither attempting to violate any express term of the policy nor to waive any of its conditions. In the case of *Johnson* v. *Insurance Co.,* 66 O. S., 6, it was held that an agent to procure a policy of insurance would not, after having delivered it to the insured, be presumed to have authority to receive notice of cancellation which would discharge the policy itself. Such presumed authority would be entirely foreign to the general authority, expressed or implied, to procure insurance in the first instance and would have no bearing upon the case under consideration. A very good example of this is found in the case of *Insurance Co.* v. *Myers,* 62 O. S., 529, where it was claimed that the soliciting agent of an employer's liability insurance company waived the express provision in the policy requiring the insured to give notice of the accident. As the Supreme Court said in that case:

"He was a mere soliciting agent, and was invested with none of the powers of a general agent, or of a special adjusting agent. * * * So far as we are informed his duties ended when he received and transmitted to the company the application of the insured for the insurance."

Besides there was an express provision in that case that no agent had authority to waive or alter in the policy contained, which was notice to the insured that any attempted waiver by the agent was in direct violation of the express terms of the policy.

There is another ground, however, upon which this branch of the case can be disposed of without considering the delivery of proofs of loss to the agent of the company. It was tentatively admitted that proofs of loss were received at the home office of the company on the sixty-second day after the fire. At any rate the undisputed fact is that the proofs were mailed in a letter addressed to the defendant's home office on the fifty-ninth day after the fire, and in the absence of any testimony to the contrary the court would presume that this letter reached its destination in due course of mail and was received by the party to whom it was addressed. This raises the question as to whether the clause in the policy requiring the proofs of loss to be filed within sixty days is a condition precedent to the filing of suit on the policy, or whether such requirement merely postponed the time of payment of the loss. It is to be particularly noted that the clause in the policy requiring the delivery of these proofs of loss within sixty days, is in a paragraph by itself and included within lines sixty-seven to eighty. Nothing in this paragraph indicates or even suggests that the failure to file proofs within such time shall render the policy void; in other words, it is not a condition of forfeiture. The second and third paragraphs of this policy are a series of provisions, violation of which render the entire policy void. In the third to last paragraph, lines 106 and 107, it is provided that no suit or action can be brought on the policy "until after full compliance by the insured with all the foregoing requirements." From this it is argued that the filing of proofs of loss within sixty days is one of those requirements which became a condition precedent to recovery—in other words, a condition precedent to liability. This involves the construction of the contract, and as in all such cases, the court has to be governed primarily by what it considers was the intention of the parties. If this last clause of the

contract renders the filing of proofs within sixty days a condition precedent to liability, it is equivalent to declaring that a violation of such requirement would render the entire policy void, because what difference can there be in practical effect between rendering the policy void and absolutely barring recovery under it, when the company refuses to pay? It is a well established principle of law that courts do not favor forfeitures and that while they will enforce forfeitures expressly provided for, they will not read a forfeiture clause into a policy of insurance by implication. As the Supreme Court said recently:

"The law abhors a forfeiture, and will countenance it only *strictissime juris.*" *Ensel* v. *Insurance Co.,* 88 O. S., 269.

The answer to the contention of defendant is that if it was the intention of the parties that the compliance with this requirement should be a condition precedent to liability, why was it not inserted in the policy in plain, unambiguous language? Such an interpretation, in the judgment of the court, would be clearly against the letter and spirit of the contract, and certainly unjust as applied to the facts in this case. The more logical inference from these provisions would be that no suit could be brought upon this policy until the proofs of loss had been filed and sixty days had elapsed thereafter. The court can well understand that if there had been such a delay in filing proofs of loss as to cause damage to the insurance company, that the insurance company would in justice be entitled to recover from the insured for such loss or damage, and it would seem a proper matter of set-off to an action on the policy. But in the present case no hardship, loss or damage could have been suffered by the defendant company, because the proofs of loss were received by it on Monday, the sixty-second day, instead of Saturday, the sixtieth day. It is contrary to the modern tendencey of the courts to permit a bare technicality to defeat recovery on a policy of fire insurance. This conclusion finds support in a recent announcement by the court of appeals in the case of *Central Trust Company* v. *Insurance Company,* 17 C.C.(N.S.), 411, the first syllabus of which reads as follows:

"The provision in a policy of fire insurance that proofs of loss must be presented to the company within sixty days after the occurrence of a loss by fire in the premises insured, does not render the policy void by reason of failure to file proofs within the prescribed time, where there is no provision in the policy which renders it void by reason of such failure."

From an examination of the record in that case it appears that the fifth defense set up in the answer of the insurance company was the same as the second defense of the answer in the case at bar, and that the terms of the policy were identical with that of the policy in question. From an examination of briefs of counsel in that case it appears that this question was squarely presented in argument, and therefore this court regards the conclusion of the court of appeals on this point as a definite pronouncement of law on the subject. It certainly is in accord with the weight of authority in this country. See *4 Cooley's Briefs on Insurance,* 3369, where that author says:

"The weight of authority, however, as already stated, seems to support the rule that neither a provision that the loss shall not be payable until after the stipulated proofs have been furnished, nor the provisions that no action shall be maintainable until after such compliance with the policy, will render the furnishing of proofs within the stipulated time a condition precedent. Rather do such provisions by their phraseology, indicate an intention that the payment or loss shall be merely postponed until the proofs are furnished."

*Joyce on Insurance,* Volume 4, Section 3282:

"If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose a forfeiture for failure to comply with other provisions of the contract, the insured may thus hold and maintain an action although he does not furnish proofs within the time designated, provided he does furnish them at some time prior to commencing action on the policy."

See also *13 American and English Encyclopedia of Law,* 2d Ed., 329, 19 Cyc., 849, note 49.

A great mass of cases support this view, including decisions of the highest courts in some sixteen or seventeen states. The doctrine further finds support in the reasoning expressed in *Insurance Co.* v. *Gray,* 2 C.C.(N.S.), 265 (affirmed without report by the Supreme Court, 69 O. S., 542). Counsel for the defendant contend, however, that this doctrine is contrary to the law of Ohio as announced in *Insurance Co.* v. *Lindsey,* 26 O. S., 348, decided in 1875. But that case did not involve the terms of a New York Standard Form of Policy, as evidenced by the clauses which were set forth in the report, although the full policy was not shown. Furthermore, it was merely a decision on a demurrer, and the court treated the policy as containing an express condition precedent, which if not performed or waived would prevent an action on the policy, and for aught there is to show this may have been true. Considerable reliance is placed in the case of *Layne* v. *Insurance Co.,* affirmed by the Supreme Court without report, 78 O. S., 397. It is true that the proofs of loss in that case were not delivered until some ten days after the expiration of the sixty day period, but it is also a fact that suit was brought before the policy became payable, to-wit, before the expiration of sixty days after proofs of loss were filed, which of itself would be fatal. From an examination of the record of that case it appears there was a directed verdict for the defendant by the trial court without indicating on what grounds the court acted, and there is nothing in the record to show upon what point or points the Circuit or Supreme Court affirmed the judgment below. This court therefore would not be justified in concluding that the Supreme Court in that case passed upon the question at bar. Counsel also relied upon the case of *Billings* v. *Insurance Co.,* 6 C.C.(N.S.), 567, in which it was held that the policy was rendered void by a failure to present proofs within the time limit, but there can be no question about that decision because there was an express clause in the policy which read:

"This entire policy, unless otherwise provided by agreement endorsed thereon or added thereto, shall be void if the insured now has  *  *  *  or in case of loss, if sworn statement, in accordance with all the requirements of this policy, as hereinafter

provided, shall not be rendered within sixty days after the fire.''

This case illustrates the fact that a decision of another court can only be considered in connection with the terms of the policy involved. The Standard Form of Policy in the case at bar does not contain any such clause as was found in the Billings case. If the failure to file proofs of loss within sixty days is to render a policy void, it should be expressed in the policy itself so that the insured may have positive notice of the necessity of filing proofs of loss within that time.

### III.

The third and last question is whether the interest of the insured was other than sole and unconditional ownership within the meaning and the terms of the policy. The policy provided as follows:

''This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership.''

It is admitted that prior to September 29th, 1911, Mrs. Wood was the owner of the fee simple title to these premises, and it is further admitted that even at the time this policy was issued Mrs. Wood had at least an insurable interest.

It is generally recognized that the purpose of such a clause is to prevent a person who has only an undivided or contingent interest from appropriating to his own use the proceeds of a policy as if he were the sole owner, and to remove from him the temptation to perpetrate a fraud and crime. In other words, its purpose is to protect the company against the payment of losses to individuals who have not, in fact, sustained them and thus prevent fraud upon the company itself. The language of the clause above quoted must be construed in the light of the reason and object of its use by the parties, for to do otherwise would be to adhere to the technical letter of the law in disregard of its spirit. It is not a question of the title possessed by the insured, but a

question of the interest of the insured in the property. Here was a woman of advanced years and feeble condition of health, annoyed and harassed by real estate agents who sought to induce her to dispose of her old home in which she had lived for forty years. It was for the express purpose of relieving her of this trouble and worry that she executed this deed after a conference with her family. In other words, the object sought to be accomplished was purely a matter of personal convenience, in no wise signifying a desire or intention on her part to really dispose of her interest in this property which she owned. The conveyance to her son as trustee was merely a transfer of the legal title to the property; the grantor reserved to herself the equitable title by the express terms of the instrument. It was a trust created for the benefit of herself, and while there was power of sale given, if it was exercised, the proceeds were to be for the benefit of herself, and upon her death this property or its equivalent was to pass as she might see fit to provide by will. She possessed all of the incidents of ownership, divesting herself merely of the bare legal title. If the property had not been insured and had been destroyed by fire, the loss would have fallen upon Mrs. Wood and no one else. She alone had the actual and substantial interest in the property. The relation of herself and her son towards this property, according to the testimony, was exactly the same after the deed was executed as it had been before. He had attended to all matters pertaining to the property and merely continued to do so. Under these circumstances we are of the opinion that this deed, in its last analysis, was nothing more than a power of attorney to permit the son to look after the property as he had been doing, and the trust was created solely for the purpose of building up around this woman a protection from the annoyance of real estate agents, and that at no time was her interest in this property other than sole and unconditional ownership within the meaning of the law. The authorities in support of this view are as follows: *2 Cooley's Brief on Insurance,* 1369, and 1376 (*g*); *5 Elliott on Contracts,* Sec. 4252; *Insurance Co.* v. *Erb,* 112 Pa., 149; *Insurance Co.* v. *Dunham,* 117 Pa., 460, in which latter case the court said:

"The purpose of this provision is, to prevent a party who holds an undivided or contingent but insurable interest in property, from appropriating to his own use the proceeds of a policy, taken upon the valuation of the entire and unconditional title, as if he were the sole owner, and to remove from him the temptation to perpetrate fraud or crime. For without this, a person might thus be able to exceed the measure of an actual indemnity. But where the entire loss, if the property is destroyed by fire, must fall upon the party insured, the reason and purpose of this provision does not seem to exist; and in the absence of any particular inquiry as to the specific nature of the title, or of any express stipulation in the policy that the insured held the legal or equitable title, either being available to secure an entire, unconditional and sole ownership, the provision referred to can, we think, have no force to defeat the plaintiff's recovery in this case."

In *Yost* v. *Insurance Co.,* 179 Pa., 384, the court uses this language:

"The conditions of the policy are to be understood, not in their technical sense, but as requiring that the insured be the actual and substantial owner. *Beech on Insurance,* Section 405."

*Insurance Co.* v. *Bowdre,* 67 Miss., 626, at 634; *Johannes* v. *Insurance Co.,* 70 Wis., 196, at 200, the court said:

"The equitable title, if sole and unconditional, answers the description, and if the property was destroyed, the entire loss would fall upon the plaintiff."

In *Hough* v. *Insurance Co.,* 29 Conn., 10, the court says on page 20:

"So, too, he is the owner of such absolute interest, who must necessarily sustain the loss, if the property is destroyed. The subject of insurance was an interest, not a title. * * *
"It seems to have been the leading object of the framers of this third article of the conditions of insurance, to protect the company against the payment of losses to individuals who had not in fact sustained them."

*Hawley* v. *Insurance Co.,* 102 Cal., 654:

In this latter case there had been a deed conveying absolute title to the land, but the court permitted parol evidence to show

that it was, in fact, a mortgage and that such was the intention of the parties. As in this case, the woman had owned the property for more than twenty years and the deed had been executed a year before the policy was issued. This doctrine has been recognized by the common pleas court of this county in the recent decision of *Little* v. *Insurance Co.,* 9 O.N.P.(N.S.), 377, in which a number of the cases above cited were reviewed.

This disposes of the important questions in the case. It is not necessary to consider the effect of the attempted assignment of this policy, because, in the first place, the fact is clearly established that the consent of the company's agents to the assignment was not obtained until after the loss had occurred, and therefore the assignment was incomplete and invalid, and in the second place, if the assignment had been completed the interest of the insured, according to the testimony, would have remained the same.

Considerable time was devoted in argument to the subject of Mr. Runck's capacity, as agent, to represent or bind the company by virtue of Section 9586 of the General Code, but in view of the conclusions of the court hereinabove announced it would not seem necessary to consider that question.

The motion for a new trial will be overruled.