Nancy Iles MACK and Arthur J. Iles, Jr., Appellants (Plaintiffs Below),

v.

AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY, a National Banking Association, and Indianapolis Newspapers, Inc., Appellees (Defendants Below).

No. 06A04–8610–CV–310.

Court of Appeals of Indiana, Fourth District.

July 22, 1987.

Rehearing Denied Oct. 22, 1987.

Irwin I. Zatz, Arvey Hodes Costello & Burman, Chicago, Ill., David F. Truitt, Donaldson Andreoli & Truitt, Lebanon, for appellants.

Virgil L. Beeler, Robert K. Stanley, Baker & Daniels, Thomas A. Jenkins, John W. Houghton, Stanley C. Fickle, Barnes & Thornburg, Indianapolis, for appellees.

MILLER, Judge.

Nancy Iles Mack and Arthur J. Iles, Jr. (Beneficiaries) are two beneficiaries of a 1930 trust created by their greatgrandmother in a parcel of commercial real estate in downtown Indianapolis. Actually, Nancy and Arthur's rights did not vest under the terms of the trust until 1972, when their grandmother died. This case involves their claims filed ten years after their interests vested. The claims pertinent to this appeal contain allegations of improprieties committed by the Trustee and the lessee of the trust real estate, all of which occurred—with the approval of their ancestors pursuant to the trust agreement—prior to the vesting of the trust in 1972.

The purpose of the trust was to distribute income generated from leasing the building to certain named beneficiaries, beginning with settlor's two daughters and continuing with their lineal descendents until the death of the survivor of her grandchildren. The Beneficiaries here were vested in their interests upon their grandmother's death in 1972. The current Trustee is American Fletcher National Bank & Trust Co., successor in interest to the original trustee, Fletcher Savings & Trust Co. Since 1948, the Trustee has leased the building to Indianapolis Newspapers, Inc. (INI) and its predecessor under a long-term and thrice-amended agreement which provides options for INI to continue renting until the year 2018. (This organization, now commonly known as the Star/News, publishes both major newspapers in Indianapolis—The Indianapolis Star for the morning and The Indianapolis News for the evening.) The Beneficiaries filed their complaint against the Trustee and INI in 1982 for recovery of damages, for removal of the Trustee, and to restrain a proposed sale of the building to INI. The trial court, after reviewing a variety of stipulated facts and exhibits, granted summary judgment in all respects in favor of the Trustee and INI on the grounds of statutes of limitations and laches. The Beneficiaries appeal to us to overturn the trial court's decision on assorted grounds. Our review of the record, the Beneficiaries' briefs and the pertinent law leads us to the conclusion that what issues the Beneficiaries have not waived or are not yet ripe are barred from further adjudication by the applicable statutes of limitations. We therefore affirm the trial court.

## ISSUE

Several issues have not been properly preserved here for appeal, and one is not yet ripe for litigation. The only issue we must address comprehensively is:

Whether the Beneficiaries are barred by statutes of limitations from recovering

damages from the Trustee and INI and from removing the Trustee for actions of which the Beneficiaries had notice no later than 1972 when their interests vested.[1]

### FACTS

The parties here compiled a thorough and sweeping record of stipulated facts and affidavits for the trial court to render its decision.[1] Those facts reveal the settlement of the Trust at issue here and select circumstances surrounding the establishment of the lease between that Trust and INI.

On May 26, 1930, Rosealba J. Jordan conveyed to Fletcher Savings & Trust Co. by warranty deed a parcel of commercial real estate located in the heart of downtown Indianapolis upon which stands the Meridian Life Building. Contemporaneously with this conveyance, Jordan executed a trust agreement with Fletcher Savings & Trust Co. by which said real estate was to be held by the trust company for purposes of managing and maintaining the property and of distributing the net income generated by it to Jordan's two daughters and further lineal descendants, as detailed more fully in the trust instrument. By the terms of the Trust, it shall automatically terminate by the death of the survivor of the settlor, her daughters, and her grandchildren, or sooner, if the beneficiaries living at settlor's death so agree in writing.

Of especial importance to the case at bar is the following provision in the trust instrument whereby the Trustee is given the power to manage the trust res, subject in certain instances to the consent of Esther D. Iles and Alma J. Kittle, settlor's daughters:

"1. Second party as such Trustee shall have full power and authority at all times to possess, use, improve, repair, manage, sell, lease, (for any term—not exceeding ninety-nine years), transfer and convey all or any part of said real estate and collect, reinvest, disburse and apply the proceeds thereof and the income therefrom in such manner as it shall deem best for the interests of said trust in its judgment and discretion, except that no alteration, improvement or repair costing more than fifty dollars, no sale, conveyance nor any lease for more than one year, nor any reinvestment shall be made nor any insurance affected during the lifetime of Esther D. Iles and Alma J. Kittle, without their written consent...."

Record, p. 44. And the Trustee is accountable to the beneficiaries for its actions insofar as specifically limited by another of the Trust's provisions:

"6. Second party [Trustee] shall not be answerable for any error of judgment or

---

1. The parties have referred many times in their briefs to facts present in the depositions of Arthur J. Iles, John S. Kittle and Robert W. Mouser, M.D., which were sent up to us in the record of proceedings. We feel compelled to disregard any and all facts contained therein because it is apparent to us the trial court did likewise—the court clerk's seal has not been broken. We have found the court's entry ordering the depositions' publication pursuant to motion of the "Defendant" (Record, p. 276), but the fact remains that they were never actually published by breaking the seal. *See Swartzell v. Herrin* (1969), 144 Ind.App. 611, 248 N.E.2d 38. The depositions were therefore never a part of the record considered by the trial court in ruling on the motions for summary judgment before it. *Id.* Being evidence "outside the record," we may not consider them either. *See Shigley v. Whitlock* (1974), 160 Ind.App. 78, 310 N.E.2d 93; *Burrus v. Silhavy* (1973), 155 Ind.App. 558, 293 N.E.2d 794 ("We cannot consider any matters outside the record." *Id.* at 566, 293 N.E.2d at 798.) Regardless, we believe the evidence actually before the court sufficiently supports its conclusion, and we can uphold its judgment without relying on any other pertinent information that might be located in the depositions.

It might also be helpful if counsel for each of the parties were to carefully review the requirements for an affidavit submitted for summary judgment under Ind.Rules of Procedure, Trial Rule 56(E):

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Almost every affidavit in the record before us suffers from the lack of at least one of these elements. Fortunately for all concerned, no party preserved error in any of these defects, and all objections are therefore now deemed waived. *See, e.g., Bidwell v. City of Kendallville* (1985), Ind.App., 486 N.E.2d 13.

mistake in good faith commited [sic] by any agent or employee of second party selected with reasonable care, nor in any way otherwise answerable or accountable under any circumstances whatsoever, except for its or their own wilful default or misconduct."

Record, p. 46. Pursuant to these general guidelines, the original Trustee and its successors (Fletcher Trust Co. and American Fletcher National Bank & Trust Co.) have confined their duties in large part to obtaining lessees for the Meridian Life Building and to disbursing the net income to the trust beneficiaries as their interests arise.

The record is not clear what lease arrangements were made early in the life of the Trust, but it is clear that by mid–1948, the Meridian Life Building was netting $10,110.56 for distribution to the income beneficiaries. At this time, one of the tenants was Star Publishing Co., INI's predecessor, whose own building was connected to the Meridian Life Building by hallways, stairs and doorways. In August, 1948, the Trustee and Star Publishing entered into a ten-year lease of the entire building at an annual cash rent of $31,000 subject only to the Trustee's payment of taxes, netting to the income beneficiaries approximately $24,000 per year. (The lease was also subject to a sublease in favor of Alma Kittle's husband's business, Columbia Investment Co., for a set rental of $115 per month.) This lease agreement was approved in writing by both Esther Iles and Alma Kittle, as required by the terms of the Trust.

Later in 1948, Star Publishing contacted the Trustee to open negotiations for extensions to the lease. Star Publishing planned on making a long-term investment for improving the Meridian Life Building to accommodate not only the expansion of its publishing enterprise but to also house radio station WIRE. After the initial inquiries, the Trustee and Star Publishing engaged in extensive negotiations of which Esther and Alma were kept apprised because their consents were essential to the success of the bargaining. Throughout, however, it appears the Trustee directed the thrust of the decision-making and correspondence toward John Kittle, Alma's husband, upon whose judgment Esther seemed to rely with regard to the Trust. ("I think Mr. Kittle will be down here soon, then he can bring me up to date on the whole matter—" Esther Iles letter, March 27, 1949; "I should like to hear what Mr. Kittle thinks about it." Esther Iles letter, June 6, 1949; "if Mr. Kittle approves no doubt I'll sign when you are ready—"Esther Iles letter, June 10, 1949). After much correspondence back and forth, on or about August 29, 1949, the Trustee and Star Publishing executed a First Amendment to the original lease with Esther and Alma's signed consent. This First Amendment extended the lease term to thirty years (through August 31, 1978) and lowered the annual rent to $30,000. However, Star Publishing assumed the payment of the taxes, thereby increasing Esther and Alma's net trust income by nearly $5,000 per year.

In mid–1956, Star Publishing (now INI) requested the Trustee consider an eight-year extension on the lease with an option for another ten-year term in order to install an additional press. Again, the Trustee consulted John Kittle on behalf of Esther and Alma, and ultimately, the two life beneficiaries consented to a second amendment. This amendment provided for two ten-year options, giving INI the opportunity to rent the building through August 31, 1998. The rent during these extended terms were for the fair rental value of the property, to be determined either by agreement or by appraisal. In June, 1966, the Trustee and INI executed a Third Amendment to the lease, adding two more ten-year options through the year 2018 in order for INI to again expand its operation by an additional press. As before, both Esther and Alma gave their written consent although evidently (there exist no stipulated facts) Esther was confined to a nursing home and had difficulty reading and writing. The remaining provisions of the lease were preserved intact.

On January 7, 1972, Esther passed away, thereby vesting in the two Beneficiaries here one-half of her portion of the trust income, the other half going to her daugh-

ter, Elizabeth Alden.[2] On January 18, the Trustee wrote the three newly vested beneficiaries, informing them of the size of each income interest, the amount of monthly rent generated by the trust res and the amount each beneficiary would be remitted. From that point, the three new beneficiaries received the specified shares of Esther's income while Alma continued to earn her remaining half.

In October, 1972, Beneficiary Arthur received copies of the trust agreement and lease as requested from the Trustee, and Beneficiary Nancy finally got around to requesting the same in 1975. Shortly after that, Nancy wrote a letter to her aunt, Elizabeth Alden, complaining about the rental price the Trust was earning and generally grousing that there was "something funny going on." Record, p. 970. However, the only step Nancy took at this time to substantiate her "suspicions" was to employ an attorney in Indianapolis (whom she replaced in 1978, about the time the rent was renegotiated).

On January 18, 1978, INI exercised its first ten-year option to extend the lease on the Meridian Life Building. After appraisals on the property and extensive negotiations (of which the Trustee kept the Beneficiaries apprised), the Trustee and INI agreed on a new annual cash rent of $274,000. Of this sum, the two Beneficiaries each received their one-eighth (⅛) share of $2,811.36 per month and apparently continue to do so. In the meantime, the Beneficiaries did nothing with respect to the management of the Trust. In fact, when one of Beneficiary Arthur's creditors attempted to garnish his interest in the Trust, the Trustee had to take extensive steps to protect him.

In July, 1982, INI proposed to purchase the Meridian Life Building from the Trust for $3,750,000 to which Alma had consented and of which the Beneficiaries had been informed. But, on August 20, 1982, the Beneficiaries filed this complaint against the Trustee and INI, seeking relief for various alleged ills concerning the management of the Trust and the terms of the lease and seeking to enjoin the sale. Although the complaint is crafted in vague and rather general terms, it appears the Beneficiaries are alleging the following:

1. The Trustee breached its fiduciary duty to all the beneficiaries when it agreed to the lease amendments in 1949, 1957 and 1966, particularly with respect to the First Amendment in 1949 which created a thirty-year leasehold without periodic escalations of the rent.

2. The 1966 Third Amendment is void because Esther was incapable of understanding its effect by physical and mental incapacity.

3. The Trustee breached its fiduciary duty to all the beneficiaries by allowing the Meridian Life Building to become a totally integrated part of INI's operations contrary to the lease clause requiring INI to return the property in the same conditions existing in 1948.

4. INI has breached the lease by making such improvements and changes in the Meridian Life Building that it cannot surrender the building in its 1948 condition at the end of the lease and has diminished the value of the property by more than $1,000,000.

5. The Trustee breached its fiduciary duty to the beneficiaries when it negotiated the $274,000 annual rent in 1978.

6. The Trustee is breaching its duty to the beneficiaries by allowing INI to keep the property underinsured.

7. INI assisted in and contributed to the Trustee's breaches of trust.

8. The Trustee improperly levied upon Beneficiary Arthur's trust income to pay attorney fees incurred in protecting his interest.

9. The proposed sale of the building to INI would irreparably injure the Beneficiaries because the proposed price does not reflect the property's true market value.

2. Pursuant to amendments to the Trust not pertinent to the case here, the plaintiff Beneficiaries succeeded to Esther's income interest at her death which would otherwise have vested in their father, Esther's son.

As a result of these allegations, the Beneficiaries requested

1. the Trustee and INI pay damages to reflect the true rental the property should have been earning;

2. the Trustee and INI pay for the diminished value of the property;

3. the Trustee be removed; and

4. the Trustee and INI be restrained from selling the property.

(The Beneficiaries also requested Alma and two of her children be added as parties defendant; attorneys' fees and costs; and the boilerplate "other and further relief.") After extensive discovery and a pre-trial conference, INI and the Trustee each moved for summary judgment on the affirmative defenses of laches and of bar by statutes of limitations. After hearing on each motion and consideration of the pleadings, discovery materials and evidence submitted by stipulation, the trial court granted both motions.

In each judgment, the trial court listed the general legal principles upon which it relied in rendering judgment. Among these grounds was that the claim against INI was barred by the statute of limitations and that the claims against the Trustee were barred by both the statute of limitations and laches. The court further found the Beneficiaries' allegations against both concerning the proposed sale were moot after presentation of evidence that the Trustee turned INI's offer down. (The litigation had prolonged the negotiations so long that Alma was no longer competent and the current interest rates had decreased so much it would have been unwise to sell the property and invest the proceeds in other ventures.) Both the Beneficiaries' motions to correct error were denied, and they appeal.

## DECISION

Certain prefatory matters must be cleared up before we proceed with our treatment of the legal issues in order to define precisely what those legal issues actually are. The foremost matter we must address is to decipher exactly what causes of action have been presented here and what relief the Beneficiaries are requesting. Once that can be determined, we can pare the issues down by eliminating those that have been waived or are otherwise immaterial to this appeal. From there we can target the heart of the remaining case and explain why we are compelled to uphold the trial court's decision.

As we stated before, the Beneficiaries' complaint is not a model of drafting. After poring through the various factual allegations, we are left with the conviction that the Beneficiaries have asserted these basic causes of action: *breaches of trust* by the Trustee in executing the three lease amendments, in allowing the Meridian Life Building to become integrated into the INI complex, in negotiating the 1978 option rental rate, in allowing INI to underinsure the building; INI's *assistance in and contribution to these breaches of trust; breach of lease* by INI for changes to the building; the Trustee's *improper levy* on Beneficiary Arthur's interest; *irreparable harm* from proposed sale of property. To remedy these injuries, the Beneficiaries seek relief in damages for rent and for the diminished value of the property, in removal of the Trustee and in injunctive restraint from the sale of the property. However, our review of the record and the briefs filed in this court reveal the Beneficiaries have failed to preserve several of these causes of action and/or remedies by reason of waiver.

Our review of both motions to correct error reveals the Beneficiaries did not address their allegations concerning the Trustee's breaches of trust based upon execution of the 1957 lease amendment and in the negotiation of the 1978 renewal, INI's breach of lease, the Trustee's improper levy, and the proposed sale of the Meridian Life Building. By failing to thereby preserve the issues, the Beneficiaries have waived them. *See* Ind.Rules of Procedure, Trial Rule 59(D); *Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92.[3] The Benefi-

---

**3.** The chief defect in the motions to correct error and the major contributing factor to our

difficulties with this case is the Beneficiaries' confusion in how to preserve error when ap-

ciaries further waived the issue of the Trustee's breach of trust with respect to insurance by failing to provide us with any citation to authority in their briefs. *See* Ind.Rules of Procedure, Appellate Rule 8.3(A)(7); *Ohio Valley Gas, Inc. v. Blackburn* (1983), Ind.App., 445 N.E.2d 1378. For a different reason, we are also prohibited from addressing the Beneficiaries' breach of trust claim for damages based upon the alleged diminution of the building's value. The lease's terms very clearly require that INI restore the building to its 1948 condition at the end of the lease, and the lease has not expired. The Beneficiaries have not yet sustained any harm. We have no jurisdiction over this issue because there is no case or controversy. In fact, the trial court should have dismissed this claim because we cannot proceed without any demonstrable injury. *See Board of Trustees of Town of New Haven v. City of Fort Wayne* (1978), 268 Ind. 415, 375 N.E.2d 1112; *City of Indianapolis v. Indiana State Board of Tax Commissioners* (1974), 261 Ind. 635, 308 N.E.2d 868.[4]

The excision of these issues from the rest of the case only leaves us to review the Beneficiaries' claims against the Trustee for damages and for removal for breach-

es of trust in the 1949 and 1966 lease amendments. As for their complaint against INI, we can only review the Beneficiaries' claim for damages for assisting the Trustee in these breaches of trust. As a further limitation to recovery, we note that none of the other beneficiaries have been joined, therefore the Beneficiaries here are apparently seeking the recovery of damages only on their own behalf.[5] Circumscribing that recovery by the size of their respective interests in the trust, we see that they are only entitled to one-fourth (one-eighth each) of any total damages to the Trust. In addition, inasmuch as they have shown no standing to recover on behalf of any deceased beneficiaries (Esther, particularly), the Beneficiaries are limited to any rent damages on the 1949 amendment accruing after their interests vested in 1972. Because they have waived the issue of the 1978 rental reevaluation, the recovery period for rents ended in 1978. With respect to property damages under the 1966 lease amendment, we can only speculate as to what damages Beneficiaries sought in relief. Evidently, they hoped to prove some injury to their interests—either to income or to the value of the trust res. Whatever it was, they are only entitled to

---

pealing a summary judgment. The primary goal of a motion to correct error in such a situation is to preserve error for review before the trial court and thereafter before us by addressing the core questions: Is there any genuine issue of material fact present in the case, and is the moving party entitled to judgment as a matter of law? Ind. Rules of Procedure, Trial Rule 56(C). Instead, the Beneficiaries drafted their motions to specifically address the trial court's general findings. By doing so, they not only inhibited their opportunity to preserve the broad sweep of their allegations, they limited themselves to errors we are not even bound to follow on review. *See, e.g., Uhl v. Liter's Quarry of Indiana, Inc.* (1979), 179 Ind.App. 178, 384 N.E.2d 1099 (" 'Findings of fact are inappropriate ... when summary judgment is granted.' " *Id.* at 179, 384 N.E.2d at 1101.)

4. In the meantime, if the Beneficiaries wish to pursue this action when the lease expires, they may do well to consider joining the other beneficiaries in order to assure themselves the case is not dismissed for lack of indispensable parties. Any action on the value of the building necessarily affects the trust res here; any deter-

mination thereon affects *all* the beneficiaries. *See, e.g., Stevens v. Loomis* (1963), D.Mass., 223 F.Supp. 534 ("all beneficiaries ... are indispensable to [the] action if its object is to benefit not merely a particular beneficiary but the entire corpus." *Id.* at 538.) Furthermore, the Beneficiaries may wish to reevaluate their position in light of the lease provisions allowing INI to alter the premises and of the cost of re-modernizing the building if INI is forced to remove all the improvements it has made in the last forty years.

5. We considered addressing this lack of joinder problem (*see Stevens v. Loomis, supra*) as an alternate mode of upholding the trial court's decision pursuant to our power to review all alternatives in affirming a summary judgment, particularly since a partial recovery by these two beneficiaries could occasion an untoward multiplicity of suits by other beneficiaries. *See, e.g., Clark v. Millikan Mortgage Co.* (1986), Ind. App., 495 N.E.2d 544. However, neither the trial court nor the parties relied on this ground, and we have chosen to affirm the judgment for the reasons everybody else has relied on—the applicable time limitations.

one-fourth of the total damages proven.[6] So, we are reviewing remedies for removal of the Trustee and one-fourth of any damages proved against the Trustee and INI.

One more digression is vital before we proceed to an examination of the law, and that digression is a brief look at our standard of review of a summary judgment. According to T.R. 56, summary judgment will be granted

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The office of summary judgment is to dispose of a conflict with a minimum of burden by establishing that a party is entitled to judgment on the law as it is applied to undisputed material facts. *E.g., Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138; *Barbre v. Indianapolis Water Co.* (1980), Ind.App., 400 N.E.2d 1142. The movant has the burden of establishing that there exist no such genuine issues of material fact, as perceived by either direct evidence or the inferences arising therefrom. *See Conard v. Waugh* (1985), Ind. App., 474 N.E.2d 130; *Barbre v. Indianapolis Water Co., supra*. The trial court, in making its determination that the movant has met its burden must take as true the facts set forth in the nonmovant's affidavits, liberally construe the facts in the nonmovant's favor, and resolve any doubts as to issues of fact against the movant. *Conard v. Waugh, supra; Sink v. Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984), Ind.App., 458 N.E.2d 291; *Barbre v. Indianapolis Water Co., supra*. In the case here, the court's task was eased in good measure by the parties' stipulated facts and exhibits. Having resolved by agreement many of the important facts in this case, the parties left the court with very few disputed issues to review. And, as it happens, those conflicts could have no effect on the undisputed evidence that the Beneficiaries' claims are time-barred as a matter of law.

*Statutes of Limitations Barring Recovery Against INI*

This court very recently declared the function of a summary judgment in the context of a statute of limitations defense:

"[W]hen the moving party asserts ... the affirmative defense of the statute of limitations and presumptively establishes that defense by placing before the trial court Trial Rule 56(C) materials showing there is no question that the action against him was initiated beyond the limited statutory period, then the burden of establishing the existence of material facts *in avoidance* of the statute of limitations defense shifts to the opponent of the summary judgment motion."

*Conard v. Waugh*, 474 N.E.2d at 134 (emphasis in original); *Lambert v. Stark* (1985), Ind.App., 484 N.E.2d 630. In the case here it is evident both the Trustee and INI presented the requisite unrebutted facts to support their statute of limitations defenses, and they must prevail.

■ We must first resolve the question of when the statutes first began to run on the Beneficiaries. All the claims revolve around the 1949 and 1966 amendments to the lease as distinct breaches of trust. It is certain that, in the absence of any allegations of concealment, the time would have begun to run against Alma and Esther at the time each breach was committed, 1949 and 1966. A statute of limitations begins to run "when a person becomes liable to an action," *French v. Hickman Moving & Storage* (1980), Ind.App., 400 N.E.2d 1384, 1388, that point being when said cause accrues by reason of the existence of both injury and damages. *Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251. Under the facts here any claims of Esther and Alma would have accrued by injury to their interests in the Trust as damaged (diminished in value) by the allegedly importunate and ill-considered lease amend-

---

**6.** Again, the lack of joinder of all the beneficiaries could obviate any recovery with respect to the trust res. *See* note 5, *supra*.

ments which bound the trust res to fixed rentals for thirty years and further bound to extend the term until the year 2018 to the same lessee, INI. It is apparent that they were immediately compensable then for both their provable share of rentals under the 1949 lease amendment and diminution of the property's value under the 1966 amendment (or any equitable remedies they may have chosen to pursue). Thus, under ordinary circumstances, we would consider the time to have begun in 1949 and 1966 because third parties are usually held accountable for the time running against their predecessors in interest. *See International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Hoosier Cardinal Corp.* (1964), S.D.Ind., 235 F.Supp. 183. In the instance of the 1966 breach, we will adhere to this rule because the alleged damage to the value of the trust res, and the Beneficiaries' interest therein, was ascertainable at that time. We will therefore measure the limitation period for

that claim from June 28, 1966, the date the lease amendment executed. The 1949 lease amendment is a slightly different matter.

■ The damages from this alleged breach concern the rental rate and are limited by injury to the income of the beneficiaries entitled thereto. The Beneficiaries here were not entitled to income until Esther's death in January, 1972. Therefore, their damages were not ascertainable until that time. The undisputed evidence indicates that on January 18, 1972, the Trustee notified the Beneficiaries of their interests in the Trust income and that the income was generated by a lease. Upon receipt of the Trustee's letters and of the monthly interest income, the Beneficiaries are charged with sufficient notice of possible claims occasioned by the 1949 breach of the underlying trust and by the terms of the lease amendments to begin the running of the applicable statutes of limitations.[7] Therefore, we will measure the 1949 claim period from January, 1972.[8]

---

7. The Beneficiaries presented "evidence" in affidavits that the Trustee never revealed its dealings with INI, its breaches of trust, nor their rights as beneficiaries. Record, p. 517, 605. Apparently, by presenting such facts they hope to toll the running of the statutes of limitations by imputing a lack of disclosure by the Trustee in disregard of its fiduciary duty and thereby taking refuge in IND. CODE 34–1–2–9. ("If any person liable to an action shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the causes of action.") These representations were made in the face of the undisputed evidence that in October, 1972 and 1975, the Trustee had sent both of the Beneficiaries copies of the trust agreement and of the lease with amendments as they had requested. In the very best light, these affidavits are merely self-serving statements that perhaps the Trustee did not accompany the documents with a detailed explanation of the forty-two year course of the Trust. However, what these affidavits also reveal, by omission, is that nowhere have the Beneficiaries presented us with any facts of their diligence in discovering this information for themselves. By this failure, the Beneficiaries have foreclosed any recovery they may have had if the statutes of limitations had begun to run later by fault of the Trustee (or INI). *See Lambert v. Stark* (1985), Ind.App., 484 N.E.2d 630.

8. Even assuming Esther Iles was actually incompetent at the time she executed the consent

to the 1966 amendment, we believe the period tolled by her incompetence would have ended at her death. Although her consent would not necessarily bind the Beneficiaries here, *see* IND. CODE 30–4–3–19, her incapacity ended at her death and the competent Beneficiaries became vested with notice of the Trust terms upon that event in 1972. The statute of limitations was no longer tolled, *see, e.g., Collins v. Dunifon* (1975), 163 Ind.App. 201, 323 N.E.2d 264, and the Beneficiaries had two more years to bring their action if the period had otherwise expired. *See* IND. CODE 34–1–2–5; *City of Fort Wayne v. Cameron* (1977), 267 Ind. 329, 370 N.E.2d 338. Thus, even if the limitations on the 1966 amendment had run prior to 1972, the Beneficiaries still had to file their complaint no later than January, 1974.

The Beneficiaries also argue for continuation of the period to sue by claiming Esther's incompetent signature made the 1966 amendment voidable. *See Downham v. Holloway* (1902), 158 Ind. 626, 64 N.E. 82 (deed by deceased grantor of unsound mind is voidable by heirs). That may be the case; however, *Downham* instructs the statute of limitations is only tolled until disaffirmance of the transaction. Nowhere have we found the Beneficiaries disaffirmed the 1966 lease amendment. Rather, they have affirmed the agreement by seeking damages thereon instead of electing to sue for rescission of a voidable transaction. *See, e.g., Grissom v. Moran* (1973), 154 Ind.App. 419, 292 N.E.2d 627 (on rehearing) (in suit for fraud,

Because it is the simplest of the three claims remaining in this action, we will first address the Beneficiaries' allegation that INI assisted in and contributed to the Trustees' breaches of trust. The simplicity of this issue rests upon the fact this cause of action rests upon a purely legal request for damages without the entanglement of equitable trust principles. The relationship of the Beneficiaries and INI is purely legal, resting as it does only upon the foundation of the lease between INI and the Trust. And, in further demarcation from the Trust, the Beneficiaries are only asserting personal legal claims for INI's allegedly improper actions and not under the lease itself. What cause of action they *are* alleging is difficult to say, but we can narrow it down to three probabilities, all of which entail statutes of limitations far shorter than the time it took the Beneficiaries to file their complaint.

■ We can find no cause of action in Indiana which sufficiently describes what the Beneficiaries allege. However, we believe the closest is the tort for interference with a contractual relationship. In that form of action, a valid and enforceable contract exists between the parties, and the defendant, with knowledge of the contract, intentionally and without justification, induces one of the parties to breach the contract to the damage of the other. *E.g., Biggs v. Marsh* (1983), Ind.App., 446 N.E.2d 977. Thus, arguably, the Beneficiaries are claiming that INI, knowing of the trust agreement between the Trustee and the Beneficiaries, intentionally induced the Trustee to breach that agreement. The specific "contract" right here is the Beneficiaries' right to enforce the fiduciary duty not to commit any error of judgment through willful default or misconduct. *But see Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281 (breach of fiduciary

duty does not involve contract obligations). Although we are unable to find any Indiana cases adequately describing the legal characteristics of a contract right, this court has recently treated it as personal property. *See Essex v. Ryan* (1983), Ind. App., 446 N.E.2d 368 (contract rights are assignable); *University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155 (contract rights are assignable). Being in many ways akin to a legal chose of action, which is personal property, *McNevin v. McNevin* (1983), Ind. App., 447 N.E.2d 611 (on rehearing), we think it fair to categorize this contract right in the same manner. Thus, the two-year statute of limitations for injury to personal property must be applied. IND. CODE 34–1–2–2(1).[9] The Beneficiaries lost these particular claims in 1968 and 1974.

■ The second possible cause of action the Beneficiaries could be asserting is that INI tortiously interfered with their interest in the Trust itself. Under the provisions of IND.CODE 30–4–2–7, a trust beneficiary's interest in trust property is personal property, unless the trust is required to distribute real estate, in which case the beneficiary's interest is real property. It is clear that if INI committed a tort with regard to the Beneficiaries' income interest by reason of the 1949 lease amendment, their cause of action expired in 1974. *See* I.C. 34–1–2–2(1). Assuming, without deciding, that INI interference with the Beneficiaries' interest in the property under the 1966 amendment is a real property interest, the statute of limitations thereon still expired after six years, in 1972. *See* IND.CODE 34–1–2–1 (Third) (injuries to property other than personal property).

■ The only other action the Beneficiaries could possibly be asserting against

---

plaintiff must elect to sue for damages or to return all benefits and seek rescission). In the alternative, the Beneficiaries are barred by the running of either the six-year statute of limitations for fraud from 1966 or the two-year extension after the lifting of Esther's incapacity, if applicable. In any event, the Beneficiaries' points regarding voidability have been nullified by the passage of time.

9. We realize that the consequential damages allegedly incurred by the Trustee were arguably both personal property (trust income—*see* IND. CODE 30–4–2–7) and real property (the diminution in value of the trust res). However, the *injury*, if any, was the tortious interference with the contract right.

INI is fraud. Without addressing the apparent defects in their complaint for lack of specificity in its allegations (*see* Ind.Rules of Procedure, Trial Rule 9(B)) and by assuming these Beneficiaries even have standing to assert the reliance element, we can quickly dispense with the time-bar issue. The statute of limitations for fraud is six years. I.C. 34–1–2–1 (Fourth). Any fraud committed by INI was rendered inactionable after 1978 for the 1949 lease amendment and after 1972 for the 1966 lease amendment.[10] Thus, any claims these Beneficiaries could possibly have asserted against INI for assisting in and contributing to any alleged breaches of trust by the Trustee died long before they filed their complaint in 1982.

*Statutes of Limitation Barring Recovery Against the Trustee*

The claims raised by the Beneficiaries against the Trustee create a different problem because they are couched in the context of the Trust. This problem notwithstanding, we find the Beneficiaries' claims for damages are also time-barred by the applicable statutes of limitations.

The chief obstacle we have encountered in this case is the tack we should follow in light of the Trust and any possible ramifications it may have upon the Beneficiaries' remedies. We acknowledge that a direct and continuing trust as exists here is a creature of equity. *See, e.g., Parks v. Satterthwaite* (1892), 132 Ind. 411, 32 N.E. 82; *Newsom v. Board of Commissioners* (1885), 103 Ind. 526, 3 N.E. 163. But what

we must also recognize is that claims for ordinary damages—also present here—is strictly a creature of the law. *See City of Gary v. Ayers* (1968), 251 Ind. 193, 238 N.E.2d 17. Our dilemma is to reconcile these abstract propositions to reach a resolution of the issue of when such legal claims may be time-barred with respect to the equitable considerations involved.

Before proceeding further, we must speak to some general principles governing the relationship of statutes of limitations and equity. Long ago, the Indiana legislature abolished the distinction between "actions at law and suits in equity" and further provided that statutes of limitations would apply to both. *Terry v. Davenport* (1916), 185 Ind. 561, 112 N.E. 998; *Brake v. Payne* (1894), 137 Ind. 479, 37 N.E. 140; *Potter v. Smith* (1871), 36 Ind. 231; *see* Ind.Rules of Procedure, Trial Rule 2 ("There shall be one [1] form of action to be known as 'civil action.' "). Through the years, the courts have applied the general limitations statute [11] of fifteen years (now ten) to actions for the enforcement of trusts and the recoupment of trust property. *See, e.g., Stonehill v. Swartz* (1891), 129 Ind. 227, 28 N.E. 620; *Martin v. Martin* (1889), 118 Ind. 227, 20 N.E. 763; *Potter v. Smith, supra; Geisel's Estate v. Landwehr* (1909), 43 Ind.App. 724, 88 N.E. 526 (on rehearing). But the general principle has also arisen—and has been reaffirmed in numerous cases—that this statute of limitations does not begin to run until the trustee repudiates the trust and/or the trust ends. *E.g., Colbo v. Buyer* (1956), 235 Ind. 518, 134 N.E.2d 45;

---

**10.** The Beneficiaries also appear to argue that the 1949 and 1966 lease amendments are void, evidently to avoid being bound by the applicable statutes of limitations. Since the Beneficiaries have confined themselves to claims for damages and not for rescission, we fail to see the relevance of this point, even if applicable. In their briefs, the Beneficiaries assume they asked for rescission of the lease amendments in their complaint. Even if we could infer that this is the case from their general prayer for "other and further relief," they are not entitled to this equitable remedy where they have not persuaded us their legal remedy for damages is not adequate. *See, e.g., City of Gary v. Ayers* (1968), 251 Ind. 193, 238 N.E.2d 17; *Jackson v. Farmers State Bank* (1985), Ind.App., 481 N.E.2d 395

("Where there is a full and adequate legal remedy, equity will not assume jurisdiction." *Id.* at 408).

**11.** The general limitations statute applies to all actions having no other specific limitation. *Potter v. Smith* (1871), 36 Ind. 231. Today that statute is IND. CODE 34–1–2–3:

"All actions not limited by any other statute shall be brought within ten (10) years unless the cause of that action arose before September 1, 1982, in which case the action must be brought within fifteen (15) years. In special cases, where a different limitation is prescribed by statute, the provisions of this section shall not apply."

*Jones v. Henderson* (1898), 149 Ind. 458, 49 N.E. 443; *Parks v. Satterthwaite, supra; Forth v. Forth* (1980), Ind.App., 409 N.E.2d 641. And therein lies the rub, as the Beneficiaries zealously argue the Trustee cannot rely on the defense of the statute of limitations to bar their action because the Trust has not ended nor has it been repudiated by the Trustee. We disagree with the Beneficiaries.

The Beneficiaries' argument is correct as far as it goes; all the Indiana cases we have found in our careful research indicate that the statute of limitations will not run against the enforcement of a trust or recovery of trust res until repudiation. However, as the Trustee astutely points out, all these cases specifically deal with the problem of *enforcement* of the Trust and not of damages for a *breach* of trust as here. As these cases rationalize the delay of the statute of limitations, the trust beneficiary has no claim to the possession of the trust property nor reason to otherwise enforce the trust until the trustee repudiates the trust and asserts personal ownership of its assets. *E.g., Jones v. Henderson, supra; Forth v. Forth, supra.* In the general scheme of things, the conclusion to hold up the running of the statute of limitations makes sense: a beneficiary's cause of action for enforcement or repossession does not accrue until repudiation or other termination of the trust. *Pugh v. Miller* (1890), 126 Ind. 189, 25 N.E. 1040. But, this conclusion is not transferable to the case here where the cause of action for breach of trust and damages accrued upon occurrence.

Indiana case law is not very instructive on the instant question, and what *is* said is dicta and in conflict with older cases. In a case to enforce a constructive trust (such enforcement differing in no respect that we can discern as against a direct trust), our supreme court ruled that the fifteen year statute of limitations applied. Curiously, the court declared that the concurrent action to collect rents and profits for the reputed trustee's wrongful possession of the property was probably governed by the shorter, six-year statute of limitations. *Taylor v. Calvert* (1894), 138 Ind. 67, 37

N.E. 531. More to the point is a comment by our own appellate court: "We are not unmindful of the rule that the statute of limitations will run against trusts where there is concurrent law and equity jurisdiction...." *Taber v. Zehner* (1911), 47 Ind. App. 165, 93 N.E. 1035. The inclination of our courts therefore appears to be that in the case here we should examine all the legal and equitable principles involved rather than to blindly look only at an inapplicable trust doctrine that will not stop the running of time. *But see Colglazier v. Colglazier* (1889), 117 Ind. 460, 20 N.E. 490; *Newsom v. Board of Commissioners, supra,* 103 Ind. 526, 3 N.E. 163. To that end, we examine those principles to reach our conclusion that the Beneficiaries' breach of trust claims for damages have been brought too late.

As we stated earlier, claims for damages, as here, seek remedies at law. Although we are cognizant of Indiana cases that refer to a breach of trust as being in equity, we are equally cognizant that either an equitable remedy was at stake, *e.g., Naylor v. Sidenor* (1886), 106 Ind. 179, 6 N.E. 345 (transfer of trust property to receiver), or the conclusion was irrelevant to the outcome of the case. *See Peoples Trust Bank v. Braun* (1983), Ind. App., 443 N.E.2d 875 (action for fraud). And it is the *remedy* we must look to, not the *injury*, for determining whether law or equity will apply. *See, e.g., Hay v. White* (1930), 201 Ind. 425, 169 N.E. 332; *Craig v. School City of Gary* (1965), 138 Ind.App. 261, 211 N.E.2d 616. Thus, we deem these claims against the Trustee, seeking damages for alleged breaches of trust, to be actions at law and outside the equitable rule. *See Thatcher v. Detroit Trust Co.* (1939), 288 Mich. 410, 285 N.W.2; *Savings Bank of New London v. New York Trust Co.* (1941), 27 N.Y.S.2d 963 (breach of duty of trustee and request for damages is action at law); *see also State ex rel. Lien v. House* (1944), 144 Ohio St. 257, 58 N.E.2d 675 (cited only for the proposition that action for damages against trustee is at law).

As additional support for our taking this action out of the traditional realm of the

limitation-stopping trust case, we must reiterate what we stated above, that these claims accrued at the time the Beneficiaries suffered both injury and damages in 1966 (third lease amendment) and 1972 (first lease amendment). This aspect of the case certainly takes it out of the rationale used to explain allowing the passage of time in the enforcement cases. We are therefore given further impetus for disregarding the Beneficiaries' citation to those cases. The final consideration then becomes what statute of limitations to apply here.

Indiana's trust code refers indirectly to limitations in suits for breach of trust in IND. CODE 30–4–6–12:

> Unless previously barred by adjudication, consent or limitation, any right against a trustee for breach of trust shall be barred as to any beneficiary who has received a final account or other statement fully disclosing the matter and showing termination of the trust relationship between the trustee and the beneficiary unless a proceeding to assert the right is commenced within three (3) years after receipt of the final account or statement if, being an adult, it is received by him personally or if, being a minor or disabled person, it is received by his personal representative. The rights thus barred do not include the rights to recover from a trustee for fraud, misrepresentation or inadequate disclosure related to the settlement of the trust.

Although it refers to a three-year limitation upon beneficiaries after a trustee's final account, the statute clearly raises the inference that ·the legislature considered the statute of limitations for any breach of trust to be shorter than the fifteen-year bar for enforcement in I.C. 34–1–2–3. Also of particular importance is the preambular phrase, "[u]nless previously barred by ... limitation," implying the existence of a statute of limitations even apart from the three-year period set forth. Case law is instructive in deducing what statutes of limitations apply here.

■ In congruence with the tenet that equitable relief is forfeit if the legal remedy is adequate is the general principle that in cases of concurrent equity/law jurisdiction, the legal statute of limitations prevails. *See Hall v. Law* (1880), 102 U.S. (12 Otto 461) 461, 26 L.Ed. 217 (Indiana law); *Minion v. Warner* (1924), 238 N.Y. 413, 144 N.E. 665; *see also Newsom v. Board of Commissioners, supra,* 103 Ind. 526, 3 N.E. 163; *Taber v. Zehner, supra,* 47 Ind. App. 165, 93 N.E. 1035; *cf. Stonehill v. Swartz, supra,* 129 Ind. 310, 28 N.E. 620 (a suit to enforce a trust is barred by fifteen-year statute of limitations for actions to quiet title). We therefore are confined to seeking the appropriate legal statute of limitations to apply, which, of course, entails deciding exactly the nature of the Beneficiaries' claims.

■ Breach of trust is defined by statute as "a violation by the trustee of any duty which he owes to the settlor or beneficiary," IND. CODE 30–4–1–2(4), and a trustee is "the person who is charged with the responsibility of administering the trust...." I.C. 30–4–1–2(15). Add to this the ingredient of the trust as a fiduciary relationship between the trustee and the beneficiary. IND. CODE 30–4–1–1(a); *Koehler v. Haller* (1916), 62 Ind.App. 8, 112 N.E. 527 (constructive trust). We then can safely declare that a cause of action for breach of trust is, in Indiana, a claim for breach of fiduciary duty. *See generally Matter of Carl F. Bettner Trust* (1986), Ind.App., 495 N.E.2d 194; *Peoples Trust Bank v. Braun, supra,* 443 N.E.2d 875 (constructive trust-type scenario for fraud); *Thatcher v. Detroit Trust Co., supra,* 288 Mich. 410, 285 N.W. 2; *see also Madden v. Mercantile-Safe Deposit & Trust Co.* (1975), 27 Md.App. 17, 339 A.2d 340 (equity); *State ex rel. Lien v. House, supra,* 144 Ohio St. 257, 58 N.E.2d 675 (equity). And, it appears the trend in jurisdictions which have confronted the matter head-on—calling a spade a spade—is to declare that a breach of fiduciary duty is a tort. *See, e.g., Sugarman v. Sugarman* (1986), 1st Cir., 797 F.2d 3 (duty of majority shareholder to minority shareholders); *Babco Industries, Inc. v. New England Merchants National Bank* (1978), 6 Mass.App. 929, 380 N.E.2d 1327 (corporate duties); *Miller v. Magline, Inc.* (1977), 76 Mich.App. 284, 256 N.W.2d

761; *Warmka v. Hartland Cicero Mutual Insurance Co.* (1987), Wis., 400 N.W.2d 923 (insurer duty to insured); *see also Thatcher v. Detroit Trust Co., supra,* 288 Mich. 410, 285 N.W. 2 (fraud and misrepresentation); *Savings Bank of New London v. New York Trust Co., supra,* 27 N.Y.S.2d 963 (negligence); *State ex rel. Lien v. House, supra,* 144 Ohio St. 257, 58 N.E.2d 675 ("tortious conduct"); *Russell v. Campbell* (1987), Tex.App., 725 S.W.2d 739 (constructive fraud); *contra Edwins v. Lilly* (1982), La.App., 422 So.2d 1217. Espousing this jurisdiction's definition of "tort" as the disturbance of or injury to another's legal rights (*see Peru Heating Co. v. Lenhart* (1911), 48 Ind.App. 319, 95 N.E. 680), we now adhere to the proposition the Beneficiaries' allegations here of breaches of trust sound in tort. The action must therefore be governed by the statutes of limitations appropriate to such actions.

The logical (and in truth, only useful) tort analogy in Indiana is in our line of cases dealing with legal malpractice. A cause of action against an attorney for malpractice is essentially a claim for breach of fiduciary duty. *See generally In re Ackerman* (1975), 263 Ind. 309, 330 N.E.2d 322 (disciplinary proceeding). Although abjuring the notion that such claims are torts, our Supreme Court has nonetheless consigned recovery for malpractice to the thesis that the substance of the plaintiff's action is a remedy for injury to personal property. *See, e.g., Whitehouse v. Quinn* (1985), Ind., 477 N.E.2d 270; *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281. It not being our purpose to question the logic of this premise in light of our jurisdiction's definition of "tort," we simply state here that the substance of the Beneficiaries' allegations are sufficiently similar in nature to those in *Whitehouse* and *Shideler* to convince us to consign them also to similar statutes of limitations for injuries to property. *See Loengard v. Sante Fe Industries, Inc.* (1983), S.D.N.Y., 573

F.Supp. 1355 (statute of limitations for breach of fiduciary duty is three years, N.Y.Civ.Prac.Law § 214(4) for injury to property); *Cornett v. Roth* (1983), 233 Kan. 936, 666 P.2d 1182 (action for breach of fiduciary duty against financial advisor governed by Kan.Stat.Ann. § 60–513 for actions on personal property and injury to rights of others); *Miller v. Magline, Inc., supra,* 76 Mich.App. 284, 256 N.W.2d 761 (minority shareholders action for breach of fiduciary duty timely within Mich.Comp. Laws Ann. § 600.5805(7) [now § 600.-5805(8) ] for injury to person or property); *Russell v. Campbell, supra,* 725 S.W.2d 739 (minority shareholder action governed by Tex.Civ.Prac. Code Ann. § 16.003, injury to property); *see also McDonald v. Rhode Island General Council* (1986), R.I., 505 A.2d 1176 (action by member against union for breach of fiduciary duty governed by three-year statute of limitations to injuries to person).

▮ Applying these principles to the facts here, we determine that the Beneficiaries' cause of action for breach of trust in the Trustee's execution of the 1949 lease amendment is an allegation, in substance, of an injury to their trust interest—personal property pursuant to I.C. 30–4–2–7. As we determined above, with respect to the case against INI, the pertinent statute of limitations is two years. I.C. 34–1–2–2(1). With the cause accruing in 1972, the Beneficiaries were barred after 1974. As for the 1966 lease amendment/breach of trust allegations, the tort injury claimed is for damages for devaluation of real property. Again, even assuming without deciding, that this is a real property interest, the six-year statute of limitations of I.C. 34–1–2–1 (Third) would govern and bars the Beneficiaries' action accruing in 1966. Summary judgment ruling the Beneficiaries were time-barred on these two claims was therefore appropriate.[12]

---

**12.** We briefly considered the contractual aspects of this Beneficiary/Trustee relationship in deciding which statute of limitations to apply to these two particular claims. *See Succession of Dubos* (1984), La.App., 453 So.2d 323 (breach of fiduciary duty is measured by La.Civ. Code Ann.

Art. 3499, the general catch-all provision); *Shelton v. Fairley* (1984), 72 N.C.App. 1, 323 S.E.2d 410 (suit to recover against executor for breach of fiduciary duty is essentially contractual and governed by N.C.Gen. State. § 1–52(1), for contracts, express or implied). But two major ob-

*Statutes of Limitations as Barring Removal of Trustee*

The remaining two of the Beneficiaries' claims against the Trustee call for its removal also on the basis of the alleged injury caused by its execution of the 1949 and 1966 lease amendments. Somewhat different treatment is required here than the two damage claims decided above because removal of a trustee is a remedy in equity. *Rooker v. Fidelity Trust Co.* (1931), 202 Ind. 641, 177 N.E. 454; *Matter of Guardianship of Brown* (1982), Ind.App., 436 N.E.2d 877; *Mazelin v. Rouyer* (1893), 8 Ind.App. 27, 35 N.E. 303. However, the treatment is not significantly different as regards the pertinent statutes of limitations.

What the Beneficiaries must keep in mind is that, so far as we can discern, they have preserved on appeal for grounds for the Trustee's removal only the two alleged breaches of trust accruing in 1966 and 1972. (We find no allegations of continuing misconduct in the administration of the trust, except the proposed sale and the 1978 rent negotiations which have not been preserved on appeal.) We cannot say, as a matter of law, that the Beneficiaries have forsaken this equitable relief by their demand for damages—the legal remedy against the Trustee alone would not necessarily give them the complete relief they seek. However, because their claim for relief *is* hinged on those alleged injuries, we are bound by the same statutes of limitations.

As we discussed earlier, statutes of limitations are employed to bar equitable actions just as they are for legal ones. Inasmuch as the remedy of removal here is premised upon the same tort as the damages remedies, the same statutes of limitations must apply: "It is a well-recognized principle that if there be both a legal and an equitable remedy, and the legal remedy is barred by limitation, the equitable remedy is also barred." *Lambert v. Billheimer* (1890), 125 Ind. 519, 25 N.E. 451, 452; *Jones v. Jones* (1883), 91 Ind. 378; *see also Hall v. Law, supra,* 102 U.S. (12 Otto) 461, 26 L.Ed. 217 (Indiana law: actions in equity are barred by limitations applying in analogous legal actions); *Newsom v. Board of Commissioners, supra,* 103 Ind. 526, 3 N.E. 163 (statute of limitations will not be governed by choice of forum, legal or equitable; legal defense will apply). These two demands for removal are therefore barred by respectively, the two-year limitation on the alleged 1949 breach (personal property) accruing in 1972 and the six-year limitation on the alleged 1966 breach (real property).[13] Summary judgment was appropriate against the Beneficiaries on this remedy, too.

In conclusion, after reviewing the facts which none of the parties dispute, the trial court correctly concluded as a matter of

---

stacles militated against extensive reflection. First of all, even though Indiana case law distinguishes between claims for breach of fiduciary duty and for breach of contractual duty, *see F.W. Means & Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251, the Trust Code does not. A "breach of trust" encompasses the trustee's violation of *any* duty. IND. CODE 30–4–1–2. The legislature obviously contemplated no duality here as has been traditionally accepted in tort/contract injuries. *See, e.g., Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 79 N.E. 503. Furthermore, the post-settlement statute of limitations for breach of trust actions, IND. CODE 30–4–6–12, at three years, is so obviously out of sync with the normal ten- and twenty-year contractual limitations, IND. CODE 34–1–2–2(6), that one can easily infer the legislature was making a deliberate statement as to the characterization of a breach of trust action.

Our second consideration in foregoing a contract remedy, needless to say, is our Supreme Court's decisions in *Whitehouse v. Quinn* (1985), Ind., 477 N.E.2d 270, and in *Shideler v. Dwyer* (1981), 275 Ind. 270, 417 N.E.2d 281. In those two cases, the court effectively eliminated any claims for breach of contract in the fiduciary setting by zeroing in on the consequential injury—as if it were a private injury in tort—rather than on the typical contract harm, injury to the rights and the duties flowing between the contracting parties. The logical extension of this reasoning certainly applies here.

**13.** We also considered the possibility the Beneficiaries are seeking to remove the Trustee on the ground of fraud. We think that unlikely, considering the deficiencies in the allegations. Regardless, the statute of limitations for actions sounding in fraud is six years, IND. CODE 34–1–2–1 (Fourth) and the Beneficiaries would still be barred.

law that the Beneficiaries' claims against INI and the Trustee expired long ago by notice of the appropriate statutes of limitations.[14] Summary judgment was correct, and we affirm.

CONOVER, P.J., and STATON, J., concur.

**14.** The most exasperating feature of this appeal was the distinct lack of direction regarding the Beneficiaries' claims and issues. We feel we have been compelled to mount their case for them. Any issue we may have failed to discern is hereafter waived for lack of cogent argument. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7); *Ohio Valley Gas, Inc. v. Blackburn* (1983), Ind.App., 445 N.E.2d 1378.

As one last issue, INI requested damages be assessed against the Beneficiaries pursuant to Ind. Rules of Procedure, Appellate Rule 15(G). Because we are not affirming a money judgment here, any decision on the matter of damages is left to our discretion. A discretionary award would be appropriate if we felt the Beneficiaries' appeal had been frivolous, taken in bad faith, for purposes of harassment, vexation or delay, or had presented meritless issues. *See, e.g., Lesher v. Baltimore Football Club* (1986), Ind.App., 496 N.E.2d 785, *trans. pending; Orr v. Turco Mfg. Co.* (1986), Ind.App., 496 N.E.2d 115, *trans. pending.* However troublesome to INI this case may have been, we found the resolution of all the issues extremely difficult for lack of clear and consistent precedent in this or any other jurisdiction. We therefore refrain from exercising our discretion and award no appellate damages.